UNITED STATES of America,
Plaintiff-Appellee,

v.

Frederick P. WALL, Defendant-
Appellant.

No. 11356.

United States Court of Appeals
Seventh Circuit.

Sept. 28, 1955.

Rehearing Denied Oct. 20, 1955.

Joseph E. Clayton, Jr., Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Edward J. Calihan, Jr., Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendant seeks by this appeal a reversal of the district court's judgment convicting him, upon the verdict of a jury which found him guilty of receiving "for personal emolument money, to wit, $400.00, from one Robert Birdsong in consideration of a promise of support and the use of influence in obtaining for the said Robert Birdsong an appointment to the position of Clerk in Charge in the United States Post Office at Chicago, Illinois, an appointive office and place under the United States," in violation of Section 215, Title 18 U.S.C.A.

Defendant relies in this court on the following alleged errors in the district court: (1) The admission of evidence of other alleged offenses wholly independent of the offense charged, (2) failure to grant defendant's motion for acquittal at the conclusion of all the evidence, and (3) failure to quash the indictment.

To the extent that they are pertinent to the alleged errors, the facts which the evidence tended to prove we now set forth.

Robert Birdsong, testifying for the government, said that in December 1949 he talked to defendant, whom he knew to be a congressman's secretary, at the defendant's office in Chicago, and asked defendant if he could help him get promoted to a supervisory grade at the Chicago post office. Defendant said he would check into the matter and suggested Birdsong get in touch with him at a later date. Early in January 1950, by telephone appointment, he saw defendant again, at which time defendant said that he had checked and found Birdsong had a good record and he thought something could be done about it.

Prior to February 11, 1950, and several weeks after the last meeting just mentioned, defendant at his office told Birdsong that he had been working on his case and he thought it could be done, although it would be very difficult.

Pursuant to defendant's instructions, Birdsong saw defendant at his office again on February 11, 1950, when he asked if there were any new developments. Defendant told him it could be done, although very difficult to do. Birdsong asked defendant "how much would it take" and defendant said "$400.00 is usually asked" and "$400.00 is the usual amount". Birdsong asked "if he would take a check". Defendant replied, "Are you kidding?" Birdsong said he would bring the money the following week.

On February 14, 1950, at the same office, Birdsong told defendant that he had brought the money and thereupon produced it in an assortment of bills. Defendant counted them, put the money in an envelope, put Birdsong's name and telephone number on the envelope and placed it in his desk drawer, saying to Birdsong "that he keeps his word". Birdsong borrowed $300 on an automobile loan and used $100 of his own money in making up the $400 paid to defendant. The loan was made on the morning of the day that he gave the money to defendant. Defendant gave Birdsong no receipt for the money. Almost two

years later, Birdsong was promoted, without taking an examination.

Fred A. Haase was then in charge of the postmaster and executive files in the postmaster's office in Chicago and he saw defendant in that office a number of times. Defendant talked to Haase on many occasions, one of the subjects being in reference to complaints made against certain employees.

Elmer L. Beard, a postal employee, in March 1949 talked with defendant concerning a promotion, and in April, 1949 he asked defendant if anything had been done in behalf of his promotion. Defendant said that to hasten the promotion would cost $400. On April 30, 1949, he gave $400 to defendant at his office and he was promoted to assistant superintendent on July 1, 1949.

Charles I. Stuart, a post office clerk, was told by defendant on June 15, 1949 that he had found someone who would enter a plea for promotion for Stuart. Stuart delivered $300 to defendant on June 19, 1949. He did not receive a promotion.

■ **1.** The general rule is that, upon the trial of an accused person, evidence of another offense, wholly independent of the one charged is inadmissible. This rule is, however, subject to some well established exceptions. In Bracey v. United States, 79 U.S.App.D.C. 23, 142 F.2d 85, at page 87, the court said:

"However, there are many well established exceptions to this rule, raised by the special circumstances of particular cases; to the end that all relevant facts and circumstances tending to establish any of the constituent elements of the crime of which the defendant is accused may be made to appear. Thus, evidence of other criminal acts has been held admissible by this court when they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged. Such evidence is admissible if it is

so related to or connected with the crime charged as to establish a common scheme or purpose so associated that proof of one tends to prove the other, or if both are connected with a single purpose and in pursuance of a single object; as well as to establish identity, guilty knowledge, intent and motive."

To the same effect is United States v. Crowe, 7 Cir., 188 F.2d 209, at page 212.

■ The testimony of Beard and Stuart tended to show that defendant's promise to use his influence to procure promotions for postal employees was customarily based upon the payment of money to him and that he had an established plan of doing business in the selling of his influence. For that reason this evidence falls within the exception to the general rule and its admission was not error.

■ Moreover, the testimony of Beard and Stuart was corroborative of Birdsong's testimony that defendant told him that $400 was usually asked and $400 was the usual amount. The general rule of exclusion is also subject to an exception in a case in which the evidence offered has a tendency to corroborate or supplement direct evidence. Hass v. United States, 9 Cir., 31 F.2d 13, 15, certiorari denied 279 U.S. 865, 49 S.Ct. 480, 73 L. Ed. 1003; Schwartz v. United States, 9 Cir., 160 F.2d 718; and 22 C.J.S., Criminal Law, § 683, p. 1092, note 66.

■ The evidence indicating that Birdsong obtained through a loan a part of the money which he paid on the same day to defendant, was likewise admissible as tending to corroborate Birdsong's testimony to that effect.

■ **2.** In view of the evidence tending to prove the facts above set forth, we believe that it was not error to overrule defendant's motions for acquittal. The evidence was sufficient to support the verdict of the jury.

■ Upon the oral argument before this court, defendant's counsel argued specifically that there was a failure of proof that the money paid to defendant

by Birdsong was for the defendant's "personal emolument," within the meaning of the act.[1] There was evidence, as above pointed out, that the money was paid personally by Birdsong to the defendant. There is no evidence that he was to turn the money over to any other person or that he did so. It was not required that the government prove such a negative fact. The jury by its verdict indicated that they believed defendant received the money for his personal emolument. The record supports that belief.

3. Defendant's motion to quash the indictment, which was overruled, was based upon the contention that the statute under which he was convicted[2] does not relate to promotions, as distinguished from an original appointment to an office or place under the United States.

We considered this same contention in United States v. Echeles, 7 Cir., 222 F. 2d 144, where we held to the contrary.

It is significant that the evidence shows that the promotion which Birdsong sought and obtained did not require him to take an examination. In other words, the promotion involved merely the designation of Birdsong. This is an appointment within the meaning of the act.

In United States v. Jacobs, D.C.Ill., 116 F.Supp. 928, at page 929, the court persuasively analyzed the same contention as defendant makes in this case:

"From a reading of the defendant's brief, he would have the Court construe the Act which would so limit its scope as to prove only for the original induction of persons into the Federal service, by improper influence, and not to the promotion of persons already in the employ of the Government. Congress, it appears from the wording of this statute, was attempting to outlaw all improper tampering with Government employment. The vicious effect would be the same whether the person involved was already in the service or was being brought in.

"Black's Law Dictionary, at page 128, defines the word 'appoint' as meaning 'to designate, ordain, prescribe, nominate.' Certainly the word 'appointive' is comprehensive enough to encompass 'promotion'. The position involved in this indictment was that of Foreman in the United States Post Office at Chicago, Illinois. When a choice of one of three candidates to the position of foreman is made, it is just as necessary for Government efficiency that absolute honesty prevail in that choice as when an original selection is made from a wider field of applicants. There is still the element of selectivity which makes the choice a designation or an 'appointment'."

Section 215 in 1948 for the first time incorporated into the act the words "or place" after the words "any appointive office".[3] If we agree with defendant's contention, arguendo, that the word "appointive" has a technical and restricted meaning when used with the word office, that contention falls when the word "place" is added and used conjunctively with "office". "Place" would include, in the broadest way, the relation of an employee to the government, such as janitors, typists, etc. The inclusion of "or place" by congress indicates that the word "appointive" is used synonymously with the word "designative."

We believe that the act under which the prosecution in the case at bar occurs was intended by congress to prohibit the sale of influence in procuring promotions in the government service as well as original appointments thereto. It is more reasonable to assume that con-

1. 18 U.S.C.A. § 215.

2. "Whoever solicits or receives, either as a political contribution, of for personal emolument, any money or thing of value, in consideration of the promise of support or use of influence in obtaining for any person any appointive office or place under the United States, shall be fined not more than $1,000 or imprisoned not more than one year, or both." 18 U.S. C.A. § 215.

3. 18 U.S.C.A. § 215.

gress was attempting to reach both situations. The court did not err in refusing to quash the indictment.

For the reasons hereinbefore set forth, the judgment of the district court is affirmed.

FINNEGAN, C. J., concurs in the result.