**UNITED STATES of America,**
**Appellee,**

v.

**Oliver SMITH, Appellant.**
**No. 11, Docket 26439.**

United States Court of Appeals
Second Circuit.

Argued Sept. 30, 1960.

Decided Nov. 10, 1960.

---

Menahem Stim, New York City, for appellant.

Samuel Sheres and S. Hazard Gillespie, Jr., U. S. Attys., New York City, David Klingsberg, Asst. U. S. Atty., New York City, of counsel, for appellee.

Before LUMBARD, Chief Judge, and HAND and FRIENDLY, Circuit Judges.

HAND, Circuit Judge.

This appeal is from a judgment convicting the defendant, Smith, of selling a parcel of heroin on April 28, 1959. The evidence for the prosecution was in substance as follows. On April 23, 1959, Avant, an agent of the Bureau of Narcotics, entered the "Dunbar Bar" in New York in company with one, Mack, who is described as a "special employee of the bureau." While there, Smith entered and had a talk with Mack out of the hearing of Avant. After Mack's return he told Avant that Smith had told him that he would sell narcotics to Avant but only through Mack as an intermediary, and that Mack had answered that Smith should remember Avant, because they had served in the same regiment during the last war, although Smith did not recall having met him. Nothing else happened on that day but on the 24th Mack introduced Avant to Smith and told him that Avant was a narcotics dealer from Boston. Smith was then accompanied by one, Moore, and the four men, Mack, Avant, Moore and Smith, all entered Smith's motor car where they talked of a purchase of narcotics by Avant from Smith. Smith and Moore questioned Avant about Avant's narcotics activity, and asked him whether he was not a law enforcement officer ("the man"). Apparently satisfied that he was not, Smith agreed to sell Avant one-half an ounce of heroin for $250.00, and told him and

Mack to wait at the "Dunbar Bar" for a telephone call. Two or three hours later Avant and Mack went to several places which Smith had suggested, but the heroin was not at any of them. The next morning Avant and Mack went to Smith's house where Avant complained of his treatment and Smith excused himself on the ground that he and Moore wanted to be sure that they were not dealing with a "policeman." He said that they were now satisfied that he was not a "policeman," and that he would deliver the heroin by Sunday, the 26th. They talked of the price again and agreed that Avant should pay $225.00 instead of $250.00 for the half ounce. On Monday, the 27th, Smith told Avant that he had not been able to get the heroin; but on Tuesday, the 28th, Avant went to Smith's house where he met Smith who asked him to wait. A little later in accordance with a telephone instruction from Smith, Avant went to another bar where shortly after his arrival Smith came and again asked Avant if he was not "the man"—meaning once more, a "policeman." Avant assured him that he was not, and Smith then gave him a brown package which contained heroin for which Avant paid him $225.00. Two other narcotics agents confirmed some of the details of Avant's testimony, though not the actual delivery.

Avant further testified that on May 15 he again went to Smith's house who asked him how he had liked the heroin. Avant told him that the grade was not good, but Smith promised that he was now handling a better grade, and that, if they continued in business together Avant would be satisfied as to the quality of the heroin. He asked Avant if he was now ready to purchase one-half a kilo of narcotics, to which Avant answered that at the moment he would take only half an ounce sample which his "partner" would check before buying a half kilo. Smith and Avant then drove to meet a friend of Smith, one Cruz, at another bar, and on the way Smith boasted of his success in narcotics. At the bar Cruz joined Smith and had a talk with him which Avant did not hear. Later that day Smith told Avant that he would not be able to get the heroin (apparently the sample for the proposed sale) until after five o'clock, but that he would call Avant at his home and let him know when he got it. Avant telephoned at about that time, but Smith told him nothing about the sample. Avant on cross-examination denied that he had known Smith in the army and there was no evidence that they had been personally acquainted.

Smith did not take the stand, but his wife did and stated that on Saturday, the 25th, Avant had come to Smith's apartment and had demanded back the money which Avant had already paid him. Smith called in Moore who paid Avant a sum of money and in addition cashed a check whose proceeds he also gave him. Mack also took the stand in defense and said that he was at Smith's apartment on Saturday, the 25th, when Avant demanded the heroin or his money back, and that someone came in with money which Smith gave to Avant. Mack denied that he had ever been present in an automobile with Avant, Moore, and Smith. Thereupon, the prosecution put in as part of the cross-examination of Mack a written statement of Mack in which he said that Smith had furnished the narcotics in an earlier sale three months before the sale charged in the indictment. On rebuttal the prosecution offered in evidence the testimony of one, Coursey, another agent of the Bureau of Narcotics, who testified to a conversation he had had with Smith on December 21st in which they had agreed upon the purchase of an ounce of heroin, but for some undisclosed reason the sale was never made.

That there was enough evidence to sustain the verdict is plain, nor were there any rulings that the defendant did or could successfully challenge except (1), the admission of the agreement with Coursey for the later sale in December, (2), the tentative arrangement in May in which Smith offered to deliver a half kilo to Avant, if the new

proposed sample proved satisfactory, (3), the statement of Mack in his cross-examination that Smith had been party to a sale before the sale alleged in the indictment.[1] We do not understand that the prosecution means to argue that it was permissible to introduce evidence of earlier or later sales or negotiations, in order to show the disposition or propensity of the accused to commit the crime charged. The contrary is very old law which the Supreme Court in Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077, and which we ourselves have at times had occasion to follow. United States v. Modern Reed & Rattan Co., 2 Cir., 159 F.2d 656; United States v. James, 2 Cir., 208 F.2d 124. Such evidence is indeed not irrelevant; it is the kind of proof that in ordinary affairs we constantly use; we reason that, if a man has been guilty of unlawful or immoral conduct on other occasions. especially those that concern the same subject matter, there is an initial probability that he was guilty of the specific charge at bar. It is inadmissible, however, because it unduly confuses the decision of the issue on which the case must finally turn, and makes it likely that the jury may substitute the general moral obliquity of the accused. Recognizing this limitation, the prosecution in the case at bar seeks to defend the evidence on the following grounds. First, it says that Smith's other dealings in heroin which we have described were relevant to the issue of his "intent," "knowledge," and "design" to make the sale in question. This might be true, if there had been any issue as to his knowledge of what the negotiations were about, but there was none. There was not a shadow of justification for supposing that, even though no sale was made, as his witnesses had sworn, he and Avant were not negotiating for a possible sale of heroin. His defense was consistent only with that assumption; the only dispute was whether any sale had ever been made. Second, the prosecution supports the evidence as to the other transactions on the ground that Smith raised the defense that he had been "entrapped" into the sale, and that it was permissible on that issue to show that he was a ready customer and needed no enticement to sell.

After the close of the evidence Smith's attorney asked the judge to charge the jury that if "the officers of the government incited and by suasion and representations lured him to commit the offense alleged and in order to trap, arrest and prosecute him therefor, then these facts are fatal to the prosecution and the defendant is entitled to a verdict of not guilty." This request the judge denied, but although he was unwilling to charge the jury in the terms asked, he was obviously not content to leave the case to them without some instructions on the issue that the defense had thus raised. Indeed, he dealt with it at some length, as follows. "It has been suggested to you in the argument of Mr. Somers * * * that here was a man who, whatever his background was, did not commit this offense but in some way was framed or that in some way he was induced to do things or say things which he would not have done if Agent Avant and maybe somebody else like this man Mack hadn't pushed him into it." And he added that if they found that the accused "had no disposition, no predisposition to deal in narcotics and that he was somebody utterly removed from the narcotic trade who would never have been in this if this man Avant and others did not wheedle him into doing it or make the proposition seem so attractive that he could not resist it, then you ought to acquit him. If you do not believe that and if you are satisfied beyond a reasonable doubt from the evidence that he was willing to get into all this and that he did get into it and that he did do the things which the witnesses have testified to, if you are satisfied of that beyond a reasonable doubt then you may and indeed, you should convict him."

It is true that the judge did not use the word, "entrapped"; but, notwith-

---

1. No objection was taken to this evidence.

standing the refusal of the defendant's request, his attorney was apparently satisfied with the language we have just quoted, for he asked nothing more, and indeed whatever be the proper scope of the word, the judge's definition of "entrapment" covered all that the evidence could demand, for it was only Smith's dealings with Mack, Coursey and Avant that could be thought to be an "entrapment." That evidence,[2] when introduced, Smith had indeed correctly challenged, as we have said; but it became limitedly admissible as soon as he sought to excuse himself by his request at the close of the evidence and in his address to the jury. However, if he still meant to press his original objection to the admission of this evidence as evidence of the fact of sale, the law required him to ask for an instruction that the jury must not use it in proof of that fact, though they might do so on the issue of "entrapment," after they had found against him on the sale. In fact he suggested no such alternative use of this evidence, and it is settled that, though at times the same evidence may be admitted on one issue and not on another, an objection to its admissibility is waived unless the jury is instructed that they may not use it in deciding the issue on which it is inadmissible. We may well doubt whether an instruction would have had any practical effect upon the jury that they might consider the dealings here in question only on the issue of inducement or "entrapment," and that they must disregard them on the issue of whether there was a sale, Nash v. United States, 2 Cir., 54 F.2d 1006, 1007. Nevertheless, the caution must be given, if the error is to remain viable to the party who has taken the objection. For example, in Malatkofski v. United States, 179 F.2d 905, 914, the First Circuit said: "A general objection to evidence will not prevail if the evidence is competent for any purpose, and the rule is that the objecting party must call the attention of the judge specifically to any limita-

tions which he believes should be imposed upon its application to the issues; in the absence of a request by counsel to that effect, it is at least ordinarily not error for the judge to refrain from giving such limiting instructions." Wigmore § 13 after a review of many state decisions, puts it even more strongly: "it is uniformly conceded that the instruction of the Court suffices for that purpose; and the better opinion is that the *opponent of the evidence must ask for that instruction*" (italics in the text), "otherwise, he may be supposed to have waived it as unnecessary for his protection."

It would have made no difference that the instruction we have supposed would have come as part of the colloquial charge, or, as we have said, that it had not been suggested until after the denial of a request for a peremptory ruling at the close of the testimony. Indeed, as part of the charge it would have been more likely to remain in the jury's minds than if given earlier. All the defense need have done was to ask the judge to tell the jury not to consider the evidence of any other sales or negotiations while making up their minds as to whether the sale actually took place, and not to use it at all until and unless they had concluded without it that there had been a sale. Having made no such request the jury was free to use the earlier and later negotiations in support of any issue to which they could be rationally relevant. The defense had waived any objections to them based upon their "competence," as contrasted with their "relevance." That they were "relevant" is manifest.

 The appellant also argues that it was error to admit anything said by him to any prosecuting officer after his arrest, although he had been advised that he need not answer, and that anything he did say might be used against him. It is true that he already retained an attorney, but he had not been indicted and he did not ask to be allowed to consult

---

2. The evidence as to the May conversations might have been admissible in any event but it is unnecessary to consider the point in view of our later discussion.

his attorney, or to have him present at the time. The prosecution did not unduly press him to answer, or impose any form of duress upon him. His theory is that the Sixth Amendment protected him from any questioning by the prosecution, at least after it learned that he had retained an attorney. We can see no reason why he must have his attorney present, if he does not avail himself of his privilege to remain silent, and is not subjected to any unlawful pressure. We do not have to consider the question that would have been presented if appellant had requested the presence of his attorney and the request had been denied.

Conviction affirmed.