Juan Jose MEDRANO, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16864.

United States Court of Appeals
Ninth Circuit.

Dec. 13, 1960.

Rehearing Denied Feb. 8, 1961.

Morris Lavine, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert J. Jensen, Minoru Inadomi, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and LING, District Judge.

LING, District Judge.

Appellant and two others, Mario Lopez Covarrubias and Frank Garcia Alva were indicted in a five count indictment for violating 21 U.S.C.A. § 174. Appellant was found guilty on all counts.

We adopt appellee's statement of facts: Special Employee Edward Ferris approached codefendant Mario Lopez Covarrubias, whom he had known for two years, on November 11, 1959, in quest of narcotics. Covarrubias stated that the narcotics could be obtained from Appellant, so the two went to Gracie's Cafe, 700 block East First Street, Los Angeles, in search of Appellant. On a prior occasion Ferris, who had been addicted to heroin, had obtained narcotics from Appellant through the aid of Covarrubias at this same place. However, on November 11, 1959, Appellant could not be located on this initial attempt and the subsequent meeting had to be arranged for that night. During the interim, Special Employee Ferris met with narcotic agents, who searched him, provided him with $150.00 in Government funds and equipped him with a "fargo" device.[1]

That night, Ferris drove to the home of codefendant Covarrubias in South San Gabriel, whereupon Covarrubias and Ferris proceeded to Gracie's where they inquired of Appellant. Having received a negative reply, Covarrubias and Ferris left Gracie's and went to a leather shop, located on Brooklyn Avenue where they asked for Appellant's phone number. Since Appellant could not be contacted here, Covarrubias and Ferris returned to Gracie's where the bartender informed them that Appellant had called and would be there in a few minutes.

Appellant arrived at Gracie's in an Oldsmobile, license number PBU 209. After an initial greeting, Appellant sat down in the back part of the establishment. Codefendant Covarrubias went over to Appellant and conversed for a few minutes. Upon his return, Covarrubias stated to Ferris that the price for 14 grams of heroin would be $125.00. Covarrubias and Ferris stepped out and sat in Ferris' car. At this time Covarrubias asked Ferris for the money but the latter refused. Covarrubias re-entered Gracie's, followed by Ferris a few minutes later.

Upon entering, Ferris walked over to Appellant and said, "Here it is, the money, the $125.00," giving the sum to Appellant. Appellant said, "Wait" and then proceeded to make a phone call. When finished with the call he sat down for a few minutes, at which time the phone rang and the bartender said, "Johnny, it's for you". At the conclusion of this phone call, Appellant advised Ferris that the heroin was in a phone booth at a gas station located at the corner of Forrest and Brooklyn. In reply to a query by Ferris as to where Forrest was, Appellant replied that it was one block west of Evergreen.

Covarrubias and Ferris left Gracie's in Ferris' auto and drove to the gas station located on the corner of Forrest and Brooklyn, where Ferris alighted from the vehicle and walked to the phone booth. There he retrieved a small packet from underneath a shelf. Subsequently, after taking Covarrubias home, Ferris met with the narcotic agents and turned over the small packet. The agents weighed and sealed the packet with its contents and mailed it to the chemist. The chemist William J. Gowans testified the substance was heroin.

Appellant readily admitted his presence at Gracie's on November 11, 1959, but denied any knowledge or dealings in narcotics at that time.

Two days later on November 13, 1959, while Special Employee Ferris was visiting Gracie's, Appellant asked how the heroin was that Ferris had received a few days previously.

Ferris saw Appellant in Gracie's on November 24, 1959, and asked for one ounce of heroin, but since his supply was low, Appellant stated that he would have to wait until the next day.

However, the next transaction with Appellant did not occur until November 29, 1959. On this date, Ferris again went to Gracie's in the morning where he asked Appellant for an ounce of heroin and arrangements were made for a meeting that night at Gracie's. Ferris then

1. A "Fargo" device is a two-way transmitter and listening instrument.

met with narcotic agents who searched him, provided him with $300.00 Government money, and installed the "fargo" device upon him.

The night of November 29, 1959, as Special Employee Edward Ferris approached the now well-known bistro, Appellant's Oldsmobile, PBU 209, was observed parked in front of Gracie's. As Ferris entered, he greeted codefendant Frank Garcia Alva, whom he had known since 1946, with "Hi, Poncho, what are you doing?" Upon observing Appellant in the back of the room, Ferris beckoned him as he walked toward the restroom. Moments later Appellant met Ferris in the restroom, at which time Ferris asked for an ounce of heroin. Appellant stated, "It will be $280.00 an ounce." Appellant stated, "Its going to be the price from now on because it is good stuff." Ferris counted $280.00 of the Government's funds and gave it to Appellant. Appellant then stated to Ferris "Wait outside for Poncho." Ferris returned to the bar and observed codefendant Frank Garcia Alva conversing with Appellant. Alva then told Ferris to go out to his car and wait.

Ferris and Alva departed from Gracie's, got into Alva's vehicle, and drove to a location near Fifth and San Julian Streets. At this place, Alva went inside a rooming house or hotel, and upon returning approximately twenty to thirty minutes later, handed Ferris a white envelope. The pair then drove to Alva's home, subsequently returning to Gracie's. Special Employee Ferris turned over the white envelope to the agents. The substance was mailed to the chemist who testified during trial that it contained heroin.

Appellant testified that on the date of the second transaction, occurring on November 29, 1959, he was at home at all times and not in the vicinity of Gracie's nor had he any dealings in narcotics with anyone.

Appellant has assigned numerous errors of the trial court for this appeal. These may be summarized as follows:

(1) denial of request for bill of particulars; (2) admissibility of evidence; (3) misconduct on the part of the prosecuting attorney; (4) entrapment; (5) instructions to the jury; (6) sufficiency of the evidence to support the verdict; (7) disqualification of trial judge.

■ Appellant's motion for a bill of particulars was granted in part and denied in part. Appellant now urges that he was entitled to information as to "who was present at the time and place alleged; the name and address of each and every person who was allegedly present at the time of the alleged transaction which allegedly occurred on or about November 11, 1959, the same as to November 29, 1959. Also the names and addresses of each and every person who will testify for the Government against the defendants."

■ In testing the validity of this denial it must be conceded that the trial court's action on a bill of particulars is discretionary, and should not be disturbed in the absence of an abuse of that discretion. The defendant has not shown that he was taken by surprise or that any substantial right was prejudiced in any way by the denial of his request for further particulars. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Himmelfarb v. United States, 9 Cir., 175 F.2d 924.

The contention is made that the cross-examination of defendant went beyond the scope of the direct-examination. Timely objection was not made at the trial. In fact, but one objection was made, and that was upon the ground that the question propounded called for a conclusion of the witness.

■ Appellant argues that the court erred in allowing the introduction of evidence concerning a narcotics transaction occurring on January 10, 1959, which involved Edward Ferris, codefendant Mario Lopez Covarrubias, and appellant.

Such evidence was introduced for the purpose of showing intent, design, knowledge or lack of innocent purpose. Evidence that a similar and related of-

fense was committed tended to show a pattern of conduct that was relevant to the issue of intent. In this connection the trial judge gave the instructions shown on margin.[2] Todorow v. United States, 9 Cir., 173 F.2d 439, 447; Henderson v. United States, 9 Cir., 143 F.2d 681, 683; McCoy v. United States, 9 Cir., 169 F.2d 776.

■ It is asserted that count five of the indictment is fatally defective, in that it failed to charge an offense, and that it merged with the substantive offense. This count is as follows:

"Beginning on or about November 11, 1959, and continuing to December 2, 1959, defendants Juan Jose Medrano, Mario Lopez Covarrubias * * * agreed, confederated and conspired together to commit offenses against the United States, as follows: to sell and facilitate the sale of and to receive, conceal, transport and facilitate the concealment and transportation of heroin, a narcotic drug, in violation of United States Code, Title 21, Section 174. * * * "

■ The sufficiency of an indictment is to be determined on the basis of practical rather than technical considerations, and it is not the law that to charge conspiracy to commit an offense, all the elements be alleged. Hopper v. United States, 9 Cir., 142 F.2d 181; Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Schino v. United States, 9 Cir., 209 F.2d 67, 69.

The conspiracy count does not merge with the substantive offense, as is urged by appellant.[3]

Three remaining contentions: (a) instructions on possession; (b) prosecutor's misconduct, and (c) entrapment are laid at rest by the principles announced

2. "In determining the issue as to intent the jury are entitled to consider any statements made and acts done or omitted by the accused, and all facts and circumstances in evidence which may aid determination of state of mind.

"Evidence that an act was done at one time or on one occasion is not any proof whatever that a similar act was done at another time or on another occasion. That is to say, evidence that a defendant may have committed an earlier act of a like nature may not be considered in determining whether the accused committed any offense charged in the indictment.

"Nor may evidence of alleged earlier acts of a like nature be considered for any other purpose, unless the jury first find that the other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused did the particular acts charged in the particular count of the indictment then under deliberation.

"If the jury should find beyond a reasonable doubt from other evidence in the case that the accused did the acts charged in the particular count under deliberation, then the jury may consider evidence as to an alleged earlier act of a like nature, in determining the state of mind or intent with which the accused did the acts charged in the particular count. And where proof of an alleged earlier act of a like nature is established by evidence which is clearly conclusive, a jury may draw therefrom the inference that in doing the acts charged in the particular count under deliberation, the accused acted wilfully and with specific intent and not because of mistake or inadvertence or other innocent reason."

3. "Nor can we accept the proposition that the substantive offenses were merged in the conspiracy. There are, of course, instances where a conspiracy charge may not be added to the substantive charge. One is where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime. See United States v. Katz, 271 U.S. 354, 355, 356 [46 S.Ct. 513, 514, 70 L.Ed. 986]; Gebardi v. United States, 287 U.S. 112, 121–122 [53 S.Ct. 35, 37, 77 L.Ed. 206]. Another is where the definition of the substantive offense excused from punishment for conspiracy one who voluntarily participates in another's crime. Gebardi v. United States, supra. But those exceptions are of a limited character. The common law rule that the substantive offense, if a felony, was merged in the conspiracy, has little vitality in this country. It has been long and consistently recognized by the Court that the commission of the substantive offense and conspiracy to commit it are separate and distinct offenses." Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489.

in Cellino v. United States, 9 Cir., 1960, 276 F.2d 941.

Finally, no valid reason is shown why the trial judge should have disqualified himself because of bias and prejudice. If appellant had misgivings on this score, he should have followed the procedure outlined in 28 U.S.C.A. § 144.

Affirmed.