UNITED STATES of America,
Plaintiff-Appellee,

v.

Homer PHILLIPS, Defendant-Appellant.

No. 15679.

United States Court of Appeals
Seventh Circuit.

March 7, 1967.

Rehearing Denied April 5, 1967.

Kiley, Circuit Judge, dissented.

R. Eugene Pincham, Earl E. Stray-horn and Charles B. Evins, Chicago, Ill., for defendant-appellant, Homer Phillips.

Edward V. Hanrahan, U. S. Atty., George E. Faber, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee, John

Peter Lulinski, Asst. U. S. Atty., of counsel.

Before KNOCH, KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Melsia Delaney and appellant Homer Phillips were indicted for knowingly receiving and concealing a narcotic drug in Chicago on April 24, 1964, in violation of 21 U.S.C. § 174. A jury found Mrs. Delaney and Phillips guilty. Phillips was sentenced to imprisonment for 10 years. Mrs. Delaney's motion for a new trial was granted and she subsequently pled guilty to a lesser charge.

Pursuant to a search warrant, Federal Narcotic Agents seized a large quantity of narcotic drugs in the first floor apartment at 8004 South Yale Avenue, Chicago, Illinois, at 3:00 P.M. on April 24, 1964. These drugs were discovered in a telephone book there by Agent Hill in the presence of Mrs. Delaney. Homer Phillips was not in the apartment at the time of the search and seizure.

The evidence showed that at 2:00 A.M. on April 24, 1964, Federal Narcotic Agents Hill and Pringle observed Homer Phillips driving to South Yale Avenue.[1] Phillips parked his car on 80th Street and entered the first floor apartment at 8004 South Yale. Ten minutes later, he left the building and drove his car to the 7100 block of South Halsted Street. After parking, he entered the New Waikiki Lounge at 7112 South Halsted Street. Agent Hill observed Phillips hand his brother Tommie an aluminum foil package, which Tommie put in his overcoat pocket. Shortly thereafter, Johnny Littleton drove Tommie from the tavern to the 4100 block of South Federal Street. The car was then curbed by Agents Hill and Pringle, who identified themselves as Narcotics Agents. At that point, Tommie jumped from the car and ran east through the Chicago Housing Project buildings at 4101 South Federal Street. Agent Hill pursued him and saw Tommie throw an aluminum foil package over a small fence surrounding the Edward Hartigan School. Hill apprehended Tommie in an alley in the vicinity and returned him to Littleton's car, where Agent Pringle was waiting with Littleton. Hill then returned to the place where Tommie had thrown the aluminum foil package and recovered it. The package contained a quantity of white powder.

Agent Pringle searched Tommie and found no other packages on his person. After Pringle and Hill brought Littleton and Tommie to the Bureau of Narcotics, the white powder in the aluminum foil package was tested and shown to contain an opiate. Tommie was subsequently indicted. This record does not show the disposition of his case.

At 8:30 A.M., Hill returned to 8004 South Yale and kept the apartment building under surveillance until Agent Pringle arrived at 3:00 P.M. with a search warrant. Pringle and Agent Prziborowski entered the front of the building. After no one answered the doorbell of the first floor apartment, Pringle knocked on the door and announced his office and intent. There being no response, Pringle forced the door open and entered. Mrs. Delaney was then walking toward Pringle from the kitchen of the apartment. At that time, Agent Hill entered the rear of the apartment. In searching the living-room, Hill picked up the Chicago telephone directory, and a manila envelope fell from it. The envelope contained a large quantity of white powder. Mrs. Delaney denied that the envelope belonged to her. She also denied knowing Homer Phillips. The white powder was later tested at the Bureau of Narcotics and was found to contain 126 grams of heroin.

Three days thereafter, Homer Phillips was arrested by these Federal Narcotic Agents at the New Bonneville Lounge in Chicago. Phillips admitted that the heroin in the manila envelope found at 8004 South Yale belonged to him. He

1. Agent LaBree accompanied Agents Hill and Pringle but was not a witness at the trial.

also admitted that he had lived at the apartment, but not recently. With reference to the manila envelope containing heroin, Phillips told Agent Pringle "Well, you know, that wasn't her [Mrs. Delaney's] stuff that you got out of my pad. That was mine."

### Necessity for Hearing on Motion to Quash

Phillips first asserts that it was mandatory for the District Court to hold a hearing on his motion to quash the search warrant and suppress evidence. The motion pointed out that Phillips, as Mrs. Delaney's "boy-friend", had full right of occupancy of the first floor apartment at 8004 South Yale Avenue. His June 2, 1965, motion adopted a May 19, 1965, motion to quash filed by Mrs. Delaney. The pertinent ground of her motion was that the search warrant was improperly executed. If the testimony of Agent Pringle is credited, the entry was valid. 18 U.S.C. § 3109; Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332.

■ Mrs. Delaney's motion was denied on May 24, 1965, "without prejudice". On June 4, 1965, the District Court continued the case until June 23, 1965, "for trial and ruling on motion of defendant Phillips to quash search warrant and suppress evidence". This contradicts Phillips' claim that he did not renew his motion to quash and suppress because Mrs. Delaney's similar motion had previously been denied. Also, Phillips' seasoned trial counsel would not have adopted her denied motion if he considered the denial to be a complete disposition of the matter. Under Rule 41(e) of the Federal Rules of Criminal Procedure, it was within the District Court's discretion to entertain the motion to suppress at the trial instead of passing upon it before trial. Since Phillips' counsel knew that the District Court had already denied Mrs. Delaney's identical motion to quash, it was Phillips' obligation to renew the motion at the trial. Di Bella v. United States, 369 U.S. 121, 129–130, Note 9, 82 S.Ct. 654, 7

L.Ed.2d 614; cf. Cheng Wai v. United States, 125 F.2d 915, 916–917 (2d Cir. 1942).

Our examination of the transcript of the proceedings before the District Court reveals that defendant's counsel was fully aware that the District Court had denied the belated motion of Mrs. Delaney without prejudice and that it would be incumbent upon him to raise the point again if he wished to press it. For example, the following colloquy occurred on September 21, 1965, when the case was called for trial:

"THE COURT: There is a motion to suppress in this, isn't there, that I will have to hear? Has that been denied on the face of it?

MR. PINCHAM [attorney for Homer Phillips]: Your Honor denied the motion on the face of the petition.

THE COURT: Without prejudice to listen to it in the trial of the case?

MR. PINCHAM: That is right, yes.

THE COURT: So, actually it is just a matter of trying the case.

MR. PINCHAM: That is what it boils down to."

■ During the November 1965 trial, neither Homer Phillips nor Mrs. Delaney raised their motions to quash the search warrant and suppress evidence. We agree with the Government that Phillips waived his right to a hearing on this motion because of failure to renew it when the District Court had granted him permission to do so. Phillips' brief concedes that he did not pursue or develop the search warrant execution issue at the trial. It is now too late to present that issue. United States v. Chieppa, 241 F.2d 635, 637–638 (2d Cir. 1957), certiorari denied, Ivicola v. U. S., 353 U.S. 973, 77 S.Ct. 1057, 1 L.Ed.2d 1136; Butler v. United States, 153 F.2d 993, 994 (10th Cir. 1946); Morton v. United States, 79 U.S.App. D.C. 329, 147 F.2d 28, 30, Note 4 (1945), certiorari denied, 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428. Furthermore, there was no showing to warrant the granting of a hearing on the motion to sup-

press inasmuch as the motion contained no offer to prove that the warrant was illegally executed, nor did the prayer of the motion show why a hearing was needed.[2] United States v. Achilli, 234 F.2d 797, 806 (7th Cir. 1956), affirmed, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918.

### Sufficiency of the Search Warrant Affidavit

■ Phillips next asserts that the affidavit for the search warrant did not set forth facts to establish probable cause for its issuance.[3] The most recent authoritative consideration of this question appears in United States v. Ventresca, 380 U.S. 102, 108–109, [85 S.Ct. 741, 746, 13 L.Ed.2d 684.] That case teaches that such affidavits need not be elaborate or technical. The affidavits are to be tested "in a commonsense and realistic fashion". With this test in mind, we have examined the supporting affidavit of Agent Pringle. The affidavit shows that Pringle and others had surveyed the premises at 8004 South Yale during the prior year and had observed several known narcotic peddlers entering and leaving Homer Phillips' first floor apartment there. Pringle stated that he knew that Phillips dealt in narcotics for seven years in Chicago and in St. Louis, and that in 1956 he had been convicted in St. Louis of unlawful possession of narcotics. The affidavit then related the 2:00 A.M. April 24th episode described above.

■ The cases on which defendant relies antedate *Ventresca*. In many of them the affidavits were based on hearsay. This affidavit was based on Prin-

gle's personal knowledge and amply justified the United States Commissioner's conclusion that there was "probable cause for believing the existence of the grounds for which the warrant was issued" (Rule 41(e) of the Federal Rules of Criminal Procedure). Walker v. United States, 117 U.S.App.D.C. 151, 327 F.2d 597, 598–599 (1963), certiorari denied, 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500; Chin Kay v. United States, 311 F.2d 317, 320 (9th Cir. 1962).

### Testimony Concerning Tommie Phillips

■■ Homer Phillips also contends that the District Court should not have permitted any testimony concerning the 2:00 A.M. Tommie Phillips episode, on the ground that it revealed another crime committed by Homer Phillips. In United States v. Wall, 225 F.2d 905, 907 (7th Cir. 1955), certiorari denied, 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 816, we determined that evidence of other criminal acts is admissible when related to or connected with the crime charged. We also pointed out that such evidence is admissible to show intent or knowledge. Without objection, the District Court's instructions concluded that both intent and knowledge are ingredients of this crime.[4] This accords with Morissette v. United States, 342 U.S. 246, 270, 273, 72 S.Ct. 240, 96 L.Ed. 288 (interpreting Section 641 of the Criminal Code (18 U.S.C. § 641)).

■ The Tommie Phillips episode tended to show that Homer Phillips knew of the presence of narcotics in the South Yale Avenue apartment and intentionally committed this crime. Here the evidence

---

2. The illegal execution point was only mentioned in one conclusory sentence in the 30-page motion to suppress. No factual allegations were made to show why a hearing would be appropriate.

3. The Government does not claim that this point was waived below.

4. The following are 21 U.S.C. § 174 narcotics cases in which evidence of defendant's participation in other narcotics transactions was held admissible to show knowledge or intent: Medrano v. United

States, 285 F.2d 23, 25–26 (9th Cir. 1960), certiorari denied, 366 U.S. 968, 81 S.Ct. 1931, 6 L.Ed.2d 1258; Bible v. United States, 314 F.2d 106, 108–110 (9th Cir. 1963), certiorari denied, 375 U.S. 862, 84 S.Ct. 131, 11 L.Ed.2d 89; United States v. Abbamonte, 348 F.2d 700, 704 (2d Cir. 1965), certiorari denied, 382 U.S. 982, 86 S.Ct. 557, 15 L.Ed.2d 472. In *Medrano* and *Bible* the transactions were clearly more remote in time than those involved in this case.

of another criminal act of Homer Phillips was blended or connected with the crime of which he was accused. Therefore, there was no error in receiving evidence of the Tommie Phillips incident.

■ Defendant also argues that the Tommie Phillips evidence was objectionable because the defense was taken by surprise. This argument is not well-taken. During the prosecutor's opening statement, defendant's counsel objected just as the prosecutor was reaching the Tommie Phillips incident. During his objection, defendant's counsel told the Court about the Tommie Phillips matter, belying any surprise. Moreover, he cross-examined Agents Hill and Pringle in such detail that he had obviously thoroughly prepared this aspect of the case. Therefore, we consider the claim of surprise to be without merit.

Defendant also asserts that the jury might have confused two crimes: (1) the 3:00 P.M. April 24th South Yale Avenue unlawful narcotics possession for which he was indicted and (2) the criminal incident involving Tommie Phillips occurring 12 or 13 hours prior thereto. We conclude that sufficient measures were taken in the District Court to dispel any confusion between the two crimes. Thus the District Court gave the following instruction:

"Now, the indictment charges the defendant with a crime of possession or concealment of narcotics which has been heretofore defined in these instructions. Each defendant is on trial only for the crime that is charged in the indictment and you must decide whether the government has proved that he or she is guilty of that particular crime and beyond a reasonable doubt of that crime alone."

Defense counsel did not submit any written instruction to elaborate upon that point, as required by Rule 30 of the Federal Rules of Criminal Procedure. In fact, he advised the Court that "We don't have any instruction * * *". Any error in the instruction is no longer viable. United States v. Smith, 283 F.

2d 760, 763–764 (2d Cir. 1960), certiorari denied, 365 U.S. 851, 81 S.Ct. 815, 5 L.Ed.2d 815.

It is noteworthy that during his cross-examination of Agent Hill, defendant's counsel admitted that the Government was not trying Homer Phillips for the Tommie Phillips event. Thus the following colloquy occurred between Phillips' counsel and Agent Hill:

"Q. Now, neither of these defendants [Homer Phillips and Mrs. Delaney] are here charged with having transferred or dispensed that object to Tommie Lee Phillips, are they?

\* \* \* \* \* \*

A. No, sir."

In his closing and rebuttal statements, the Assistant United States Attorney advised the jury on several occasions that it was only to pass upon the April 24th afternoon possession of narcotics at 8004 South Yale Avenue, and that the Tommie Phillips incident was only offered to show Homer Phillips' knowledge and intent, as required by the statute.

■ We are satisfied that any possible confusion between the two offenses was sufficiently dispelled by the District Court and by counsel for both sides.

■ On the ground that there was an insufficient chain of evidence, Phillips states that the Government did not show that the package Homer Phillips gave to Tommie Phillips about 2:00 A.M. on April 24 was the same package discarded soon thereafter by Tommie. Without objection, the District Court instructed the jury that circumstantial evidence is proof of a chain of facts to be weighed by the jury. Their verdict showed that they were satisfied that the package transferred from defendant to his brother and the one found by Agent Pringle were the same package, and that it contained a narcotic drug. The uncontroverted testimony showed that Littleton's car and person and Tommie were searched by Agent Pringle, and no aluminum foil package was found except the one Tommie had discarded at the Edward Hartigan

School. Therefore, it was permissible for the jury to conclude that the package found at the school was the same package Homer Phillips had just previously given Tommie in the New Waikiki Lounge. It was the duty of the jury to weigh this evidence. Its finding against defendant was a reasonable one to draw from the evidence and consequently may not be disturbed. United States v. Wilson, 361 F.2d 134, 136 (7th Cir. 1966).

*Testimony as to Previous Jail Sentence*

Defendant complains of Agent Pringle's direct examination testimony as to why defendant did not wish to sign a statement of guilt, defendant stating to Pringle "No, I don't want to go back to jail either". This sentence was volunteered as part of a lengthy answer of Pringle in explaining what occurred when Homer Phillips was arrested. There is no claim that the answer was deliberately elicited by the Assistant United States Attorney. In fact, this subject was raised by defense counsel's prior recross-examination of Agent Hill, when Hill was asked "Now, when you got downtown, he [Homer Phillips] told you he wouldn't sign a statement because he didn't want to go to jail, is that right?"

When defendant objected to Pringle's answer, the entire post-arrest conversation between defendant and Pringle was immediately stricken by the District Court. Also, the jury was then and later instructed to disregard any stricken testimony. In view of defendant's own admissions and other strong evidence of guilt, "the conviction is sure that the error did not influence the jury, or had but very slight effect", so that the verdict and the judgment should stand. Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557; United States v. Levi, 177 F.2d 827, 830, 831 (7th Cir. 1949); United

States v. Haskins, 345 F.2d 111, 115–116 (6th Cir. 1965). Even where a witness testified that a defendant was No. 7 on the national list of major violators of the narcotics laws, the conviction was affirmed because the District Court promptly sustained the objection and instructed the jury to disregard the statement. United States v. Angelet, 231 F. 2d 190, 192 (2d Cir. 1956), certiorari denied, 351 U.S. 952, 76 S.Ct. 849, 100 L.Ed. 1476. The brief, unemphasized reference to defendant's having been in jail does not amount to prejudicial error in view of the prompt exclusion of the statement and the instructions given twice by the trial court.[5]

The Court has considered the remaining arguments of defendant and finds them to be insubstantial.

Affirmed.

KILEY, Circuit Judge (dissenting).

I respectfully dissent. In my opinion Homer Phillips was denied a fair trial by the admission, over his repeated objection, of the testimony detailing the transaction between defendant and Tommie Phillips, the denial of repeated motions to strike the testimony, and the failure to limit the jury's consideration of that testimony to the element of knowledge and intent. The likely result of these rulings was confusion in the jurors' minds of the offense charged in the indictment with whatever offense was disclosed by the testimony of the Tommie Phillips transaction.

I agree with the majority that defendant was not prejudiced through surprise at the introduction of evidence of the Tommie Phillips transaction. The majority's second reason, as I understand it, for approving the admissibility of the evidence, is that this transaction was "blended or connected with" the crime of concealing the narcotics found in the flat. There was no evidence, nor legal inference justified, that the tinfoil pack-

5. Evenson v. United States, 316 F.2d 94, 95–96 (8th Cir. 1963); see also Huerta v. United States, 322 F.2d 1, 3 (9th Cir. 1963), certiorari denied, 376 U.S. 954, 84 S.Ct. 974, 11 L.Ed.2d 973; Conner v. United States, 322 F.2d 647 (5th Cir. 1963).

age the defendant gave to Tommie Phillips contained heroin taken from the narcotics in the flat. Even if such an inference were justified, the transaction was not relevant to "complete the story of the crime on trial." McCormick, Evidence § 157, at 328 (1954); compare United States v. Levine, No. 14921, 7th Cir., 372 F.2d 70.

The third reason stated by the majority, that the Tommie Phillips transaction testimony was offered to prove knowledge and intent, does not of itself justify the admission of the testimony. The underlying purpose of the rule as to admission of "other crimes" testimony is to prevent unfair prejudice to the defendant while admitting all relevant evidence. That purpose is subverted by the majority's result because the prejudice caused by the testimony of the Tommie Phillips incident far outweighs its probative value on the issue of knowledge and intent. A balancing rather than mechanical approach has been applied by the courts where the "other crime" was not substantially similar to the crime charged, Enriquez v. United States, 314 F.2d 703 (9th Cir. 1963),[1] and has been approved where the issue of intent has not been raised by the defendant. United States v. Smith, 283 F.2d 760 (2d Cir. 1960) (dicta), cert. denied, 365 U.S. 851, 81 S.Ct. 815, 5 L.Ed.2d 815 (1961); cf. United States v. Magee, 261 F.2d 609 (7th Cir. 1958). The late Professor McCormick sharply criticizes the mechanical approach and cites a number of state cases, in support of the balancing approach to the other-crimes evidentiary problem. McCormick, op. cit. supra § 157, at 332.

In my view the factors to be considered in determining the admissibility of the testimony of the Tommie Phillips transaction are:

1. the weight of the evidence that the defendant committed a crime by participating in the transaction;

2. the probative value of the testimony on the issues of intent and knowledge;

3. the necessity of using it in view of the issues raised by the defendant and the other evidence available to, and used by, the prosecution;

4. the danger of arousing hostility in the jury by showing the defendant to be a "bad man"; and

5. the danger of confusing or misleading the jury by the introduction of a side issue and consuming an undue amount of time.

See Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948); McCormick, op. cit. supra § 157, at 332, & § 152, at 319; Uniform Rule of Evidence 45.[2]

On this record, the first two of these factors weigh in favor of admission, but not heavily. With respect to the first, there is some doubt that the defendant committed a crime by handing the tinfoil package to Tommie Phillips. There was no proof of knowledge by defendant that the package given to Tommie Phillips contained heroin, and the government was hard put to show that this package was the one found by the government chemist to contain heroin. As for the second factor, the dissimilarity between an exchange (the "other crime" with Tommie Phillips) and a conceal-

---

1. In *Enriquez*, the Ninth Circuit held that evidence of prior use of marihuana was inadmissible on the issue of intent in a case involving the sale of heroin. 314 F.2d at 717.

2. In discussing the background of the rule in a context not relevant here, the *Michelson* Court said:

The inquiry [into other crimes] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice. (Footnotes omitted.)
335 U.S. at 475–476, 69 S.Ct. at 218.

ment (the crime charged) would not of itself bar admission on this record. Compare Enriquez v. United States, 314 F.2d 703 (9th Cir. 1963).[3]

The last three factors, on the other hand, weigh heavily for exclusion of the evidence:

*Third factor.* There was other evidence not only available but used by the government from which the jury could find intent and knowledge.[4] Moreover there was no substantial issue of intent. Yet the jury was told of the incident in the government's opening argument over defense objection. The first government witness began his testimony by relating the incident, again over objection, and the incident grew in importance as the government's case in chief progressed. A different question would be presented if the defendant had specifically raised the issue of knowledge and intent. The government then might properly meet that defense by introducing the other-crimes testimony on rebuttal. But, in fact, the defendant did not take the stand or offer other evidence on this issue. I think it was un-

fair to buttress an otherwise sufficient amount of evidence on this issue with testimony of questionable probative value and undisputable prejudicial effect.[5] United States v. Smith, 283 F.2d 760 (2d Cir. 1960) (dicta), cert denied, 365 U.S. 851, 81 S.Ct. 815 (1961). The presumption of innocence cannot raise the issue so as to justify serious prejudice in these circumstances.[6] United States v. Magee, 261 F.2d 609 (7th Cir. 1958).

*Fourth factor.* This testimony unduly prejudiced the defendant by giving an aspect of criminality to him—even if the testimony of the Tommie Phillips transaction was not legally sufficient to show that the defendant committed a crime, it raised the specter of his "bad" character.

*Fifth factor* (and most important in my view). The undue time and emphasis involved in the testimony of the Tommie Phillips incident, as well as its dramatic impact, must have confused the jury. This was not only the most interesting story in the government's case, it was the first one told. The finding in the flat of the offending heroin, the

3. It appears from the cases that the similarity between the "other crime" and the crime charged need not be as precise in cases involving the intent exception, such as *Enriquez*, as in cases involving the "distinctive handiwork" exception. E. g., compare United States v. Wall, 225 F.2d 905 (7th Cir. 1955), cert. denied, 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 816 (1956), with United States v. Magee, 261 F.2d 609 (7th Cir. 1958).

4. There was the finding of the substance, stipulated to be heroin, in the flat used at times by the defendant, the testimony of codefendant Melsia Delaney of her relationship with defendant and the admission of the defendant that both the "pad" (apartment) and the heroin were his.

5. In this context it should be pointed out that the rule and its exceptions are premised upon the inherent existence of prejudice in evidence of other crimes— which, in some circumstances, is overcome by considerations of relevancy.

6. As Lord Sumner, an English jurist, has put it:
   Before an issue can be said to be raised, which would permit the introduction of such evidence so obviously prejudicial to the accused, it must have been raised in substance if not in so many words, and the issue raised must be the one to which the prejudicial evidence is relevant. The mere theory that a plea of not guilty puts everything material in issue is not enough for this purpose. The prosecution cannot credit the accused with fancy defenses in order to rebut them at the outset with some damning piece of prejudice.
   Thompson v. The King, [1918] App.C. 221, 232.

   In *Smith*, the Second Circuit affirmed on the ground that other-crimes evidence was admissible on an entrapment issue. But with respect to the issue of intent, the court said it was not admissible since the "only" issue was whether any sale of heroin had been made. 283 F.2d at 763. In *Magee*, a bank robbery case, this court noted that other bank robberies were not admissible on the issue of intent because there was "obviously" no question of the bank robber's intent, 261 F.2d at 612, and reversed because the other bank robberies were "not connected" to the bank robbery charged.

subject of indictment, was not of comparable interest. And the Tommie Phillips story is the one which must have made the most vivid impression on the jury. Relevancy required showing that the tinfoil package handed to Tommie Phillips contained heroin. This necessitated establishing the "chain of possession" from the time defendant gave Tommie Phillips the package until the contents were chemically tested. And this in turn required introduction of the dramatic details of Tommie Phillips' attempted getaway, the pursuit, the throwing away of the package, and the arrest. Faced with the admission of this evidence, defense counsel was forced to attempt to reduce its effect by challenging, with considerable success, the contents of the package through cross-examination, thus highlighting this evidence for the jury. This diverted the jury to the question: "Did that (Tommie Phillips) package contain heroin?" and away from the central issue: "Did the defendant violate section 174 by possession of heroin in the flat?"

Neither cross-examination by defense counsel nor closing argument by government counsel could supplant the trial court's duty to insure that the jury fully understood the issues and the relevance of the evidence to them. The general instruction quoted by the majority did not adequately fulfil this duty either. The "crime that is charged in the indictment" was not specific enough to distinguish the Tommie Phillips transaction from possession in the flat.[7] The court's instruction that the indictment charged "possession or concealment" as defined in its previous instructions was no more enlightening to the jury, for both this phrase and the previous instructions were broad enough to apply to both sets of facts.

It is true that defendant tendered no written instruction. His counsel did say, "We don't have any instruction," but this was clearly a reference to a reasonable doubt instruction. A great part of the colloquy over instructions was given to the question of an instruction limiting the testimony of the Tommie Phillips episode to the knowledge and intent element. Defendant's attorney persisted in arguing for an instruction using care to inform the jury that defendant was charged only with possession of the heroin in the flat and not with possession of the heroin which Tommie Phillips received from defendant and threw away. The district court finally decided to give the general instruction set out in the majority opinion, having stated it would not give "the instruction suggested by the defense" because it wanted to instruct generally on the point and not "upon the facts of the case." Defense attorney asked whether the court was "denying the tendered instruction I have suggested. * * *" The court said "Yes."

The narcotics cases referred to in footnote 4 of the majority opinion do not militate against my dissent. First of all, determination of whether the general rule or exception applies depends upon the facts in each case. In Medrano v. United States, 285 F.2d 23 (9th Cir. 1960), cert. denied, 366 U.S. 968, 81 S.Ct. 1931, 6 L.Ed.2d 1258 (1961), the more detailed instruction given by the court is sufficient to distinguish that case. And there was no indication by the court that the "other crime" was any different from that charged. In Bible v. United States, 314 F.2d 106 (9th Cir.), cert. denied, 375 U.S. 862,

7. The indictment charged:
    That on or about April 24, 1964, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, HOMER PHILLIPS and MELSIA RUTH DELANEY, defendants, did then and there fraudulently and knowingly receive, conceal, buy, sell and facilitate the transportation, concealment and sale of approximately 126.300 grams of heroin, a narcotic drug, which had been previously imported into the United States contrary to law, knowing the same to have been so unlawfully imported; in violation of Section 174, Title 21, United States Code, as amended by the Narcotic Control Act of 1956.

84 S.Ct. 131, 11 L.Ed.2d 89 (1963), the court instructed the jury at the time the testimony was admitted, and again at the end of the case, with respect to the limitation to the purpose of the testimony. And the crime charged there was precisely the same as the "other crimes." In United States v. Abbamonte, 348 F.2d 700 (2d Cir. 1965), cert. denied, 382 U.S. 982, 81 S.Ct. 1931, 6 L.Ed. 2d 1258 (1966), the court merely stated the general rule, citing United States v. Massiah, 307 F.2d 62 (2d Cir. 1962), rev'd on other grounds, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). And in *Massiah* there was no discussion whatever of the rule. In none of these cases was there any serious question of introducing a side issue which would have confused the jury.

Finally, United States v. Wall, 225 F. 2d 905 (7th Cir. 1955), cert. denied, 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 816 (1956), cited by the majority as primary authority, does not support admission of the Tommie Phillips incident. That case involved the exception allowing proof of other crimes showing the "distinctive handiwork" of the defendant on the issue of identity. The unique "modus operandi" of the defendant there rendered the other-crimes evidence in that case highly probative of identity. And the other-crimes evidence there involved no vivid side issue capable of prejudicing the defendant.

The "bad man" prejudice from the Tommie Phillips incident was aggravated by Agent Pringle's testimony that the defendant had told him he did not want to go "back to jail." I find it impossible to dismiss the "back to jail" testimony as having "very slight effect" as the majority indicates. Although the reference was obviously "brief," it cannot be called "unemphasized." Immediately following this statement of Pringle's, defense counsel moved to strike the testimony or, alternatively, for a mistrial. The court instructed the jury to disregard that portion of Agent Pringle's testimony and then adjourned court for the day. As the jury filed by the wit-

ness stand, one juror remarked to Agent Pringle to the effect that he had "better watch that," clearly referring to the "back to jail" remark that was stricken. If the effect of the testimony and its being stricken impelled one juror to this impropriety, I doubt that it can be said to have had merely slight effect on the other jurors.

Due process required that the jury try Homer Phillips on the crime charged. I have a grave doubt that the jury could have done so on this record. Accordingly, resolving that doubt in favor of defendant, I would reverse and remand for a new trial.