**UNITED STATES v. SPADAFORA.**

No. 10096.

United States Court of Appeals
Seventh Circuit.

May 9, 1950.

Stanley H. Richards, Chicago, Ill., for
appellant.

Otto Kerner, Jr., U. S. Atty., Richard E. Gorman, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, DUFFY, and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

Defendant was found guilty by a jury on two counts of an indictment: (1) for possession of 500 forged and counterfeited $20 Federal Reserve Notes and 940 forged and counterfeited $10 Federal Reserve Notes and (2) for conspiracy to pass, utter, and to keep and possess, with intention to defraud, counterfeit $10 and $20 Federal Reserve Notes. On this appeal defendant asserts as errors entrapment, unlawful search and seizure, error in admission of evidence and denial of defendant's request to poll the jury as to whether they had read a certain newspaper article.

█ We think the testimony properly received in evidence clearly sustains the charge of possession of counterfeit notes. As the sentence imposed on the defendant on the conspiracy count is less in amount and is to run concurrently with the sentence imposed on the possession count, we shall direct our attention to errors alleged regarding the latter count.

Danny Tate operated a barbershop in Chicago. Late in April, 1949, he offered to sell counterfeit currency to James B. Bevill, a former schoolmate, and a patron of his shop. Bevill promptly informed the United States Secret Service and was instructed to obtain samples of the spurious currency if possible. Later Bevill introduced Tate to Henry Cohen, who was supposedly interested in purchasing counterfeit money, but who actually was a Secret Service agent. On June 4, 1949, Tate introduced Bevill to the defendant Spadafora as the man who would be able to deliver the counterfeit money. On June 10 Bevill met defendant Spadafora, who turned over to him what purported to be two samples of the counterfeit money which he had available. Bevill turned these bills over to the Secret Service and later on the same day returned to Tate's barbershop, accompanied by Agent Cohen, at which place they met de-

fendant Spadafora and there discussed the proposed delivery of a quantity of counterfeit money. Defendant agreed to produce $20,000 in counterfeit money in exchange for $5,000 in genuine currency. On June 11 Bevill had another conversation with defendant Spadafora, concerning the planned delivery of counterfeit money, and Mrs. Bevill was present at this conference. On June 14 Spadafora appeared at Bevill's home carrying a brown paper bag under his arm. After being admitted he went into the living room and placed the paper bag containing the counterfeit notes on a table saying, "Here it is, you want to see it?" Bevill promptly contacted the Secret Service. Two agents arrived at his home about an hour later, and Bevill admitted them into his home. They found defendant Spadafora and the counterfeit money both on a couch. The money was seized and the defendant arrested. It is admitted that the Federal Reserve Notes brought to Bevill's home by defendant Spadafora were in fact counterfeit. Additional evidence linked the defendant with the seized counterfeit currency, but enough has been stated to show that as to the charge of possession, the evidence of defendant's guilt was overwhelming.

█ Defendant's charge of entrapment by government agents cannot be sustained. Bevill was not a government agent, but a respectable businessman who promptly reported to the Secret Service Tate's offer to sell him counterfeit money. But assuming because he worked with the Secret Service at their request that he should be considered in the category of a government agent, there is still no evidence to show that he or any government agent entrapped the defendant. The first suggestion as to the deal in counterfeit money came from Tate. It was Tate who brought the defendant Spadafora into the picture. The price at which the spurious money was to be sold was set by defendant and Tate. Neither Bevill nor a government agent in any way implanted in Spadafora's mind the criminal intent of possessing, or attempting to pass or utter counterfeit currency. Something more than the mere use of decoys or detectives by the government is

necessary to prove entrapment. Goldstein v. United States, 7 Cir., 256 F. 813; Price et al. v. United States, 7 Cir., 56 F.2d 135. Where government agents merely offer the opportunity for the commission of a crime to one who already has the criminal intent, entrapment is not present. United States v. Lindenfeld, 2 Cir., 142 F.2d 829.

■ With an abundance of caution the trial court at the request of defendant instructed the jury regarding the law of entrapment, and defendant does not complain about the instructions which were given on this point. It must be presumed that the jury followed the instructions, Hines v. United States, 10 Cir., 131 F.2d 971, and found as a fact that entrapment did not exist. We do not find any error on the question of entrapment. United States v. Kendall, 7 Cir., 165 F.2d 117. See: Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249.

■ Defendant contends that the counterfeit notes were seized as a result of an unreasonable search and seizure, in that sufficient time elapsed for the government agents to have obtained a search warrant as well as a warrant for the defendant's arrest. Strong reliance is placed on Trupiano et al. v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, in defendant's brief which apparently was prepared prior to February 20, 1950, when the Supreme Court announced its decision in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 435. In that case the court said: "* * * To the extent that Trupiano v. United States * * * requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. * * *" In any event the evidence discloses that the time to obtain a search warrant was insufficient after the agents learned that the defendant was at Bevill's home. One of the agents testified that they received the call at 8:00 o'clock P.M. and that they reached the home about 8:30 o'clock P.M. The very fact that the agents were not alerted as to the proposed visit supports the government's contention that prior arrangements for such visit had

not been made. We consider that the arrest was lawful, and that the seizure of the counterfeit money, being in the immediate presence of the defendant, was entirely proper. United States v. Rabinowitz, supra; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann. Cas.1915C, 1177.

■ Defendant's principal complaint as to the admission of evidence over his objection concerns testimony on conversations between government witnesses and Danny Tate at times when the defendant was not present. The trial court explained several times that such evidence was being received only if it were to be shown that such conversations had been in furtherance of the conspiracy charged. The evidence in the case at bar disclosed beyond all reasonable doubt that a conspiracy did exist, and that Spadafora joined it at some time prior to the date when he appeared at Bevill's home with the counterfeit notes. One who joins a conspiracy previously formed and assists in its execution becomes liable with the others not only for the acts done thereafter but also for the original conspiracy and acts done in furtherance thereof. United States v. Anderson et al., 7 Cir., 101 F.2d 325. The trial court did not commit error in receiving testimony as to conversations with Tate.

■■ We have given consideration to other errors alleged by the defendant, but feel that, even assuming they were errors, which we do not say is the case, they did not affect the substantial rights of the defendant and therefore must be disregarded. Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A.; Bihn v. United States, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed. 1485. Errors in a criminal case may be disregarded in the face of overwhelming evidence properly received of the defendant's guilt. Kotteakos et al. v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

Prejudicial error being absent, the judgment of guilty is

Affirmed.