## UNITED STATES v. CROWE.
### No. 10215.

United States Court of Appeals
Seventh Circuit.

April 13, 1951.

210

John M. Karns, Louis Beasley, East St. Louis, Ill., for appellants.

William W. Hart, U. S. Atty., Ray M. Foreman, Asst. U. S. Atty., Danville, Ill., and Ernest R. McHale, Asst. U. S. Atty., East St. Louis, Ill., for appellee.

Before KERNER, DUFFY and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

William L. Crowe, Silas Brooks, Adrian Higgins, Newton H. Higgins, Dorothy S. Crowe, Annie Higgins and Mary Cornwell were indicted, charged with violations of sections 472 and 473, Title 18 U.S.C.A. and Section 371, Title 18 U.S.C.A. The indictment contained nine counts.

Mary Cornwell was granted a severance, Brooks pleaded guilty, and all other defendants pleaded not guilty and were tried by a jury.

The first four counts charged defendants with unlawfully uttering, publishing and passing certain falsely made, forged and counterfeited ten dollar Federal Reserve notes to three different persons on different dates, knowing said notes to be falsely made, forged and counterfeited with intent to defraud, in violation of section 472, Title 18 U.S.C.A.

Count five charged defendants unlawfully kept in their possession certain falsely made, forged and counterfeited obligations of the United States, in violation of section 472, Title 18 U.S.C.A.

In count six it is charged defendants unlawfully bought and received certain forged and counterfeited ten dollar Federal Reserve notes, in violation of section 473, Title 18 U.S.C.A.

Count seven charged defendants unlawfully sold and delivered certain forged and counterfeited ten dollar Federal Reserve notes, in violation of section 473, Title 18 U.S.C.A.

Count eight charged defendants with unlawfully transferring and delivering certain forged and counterfeited ten dollar Federal Reserve notes, in violation of section 473, Title 18 U.S.C.A.

Count nine charged defendants with an unlawful conspiracy to commit certain criminal offenses against the United States, in violation of section 371, Title 18, U.S.C.A.

The cause was submitted to the jury as to defendants William L. Crowe and Dorothy S. Crowe on all counts; as to defendants Newton H. Higgins and Annie Higgins on counts 5, 6, 7 and 9; as to Adrian Higgins on counts 1, 2, 3, 4, 5, 8 and 9.

Verdicts of guilty against William L. Crowe and Dorothy S. Crowe were returned on counts 5 and 9; against Adrian Higgins on counts 1, 2, 3, 4, 5, 8 and 9; against Newton H. Higgins and Annie Higgins on counts 5, 6, 7 and 9. Judgments were entered on the verdicts and the appellants were each sentenced to imprisonment for various terms. This appeal followed.

Appellants assigned sixteen errors, but in their brief they say: "The defendants herein are prosecuting this appeal from the judgment of the District Court and limiting their review to a consideration of alleged errors in the admission of certain testimony against them over their timely and repeated objections." Their oral argument in this court directed our attention to two alleged errors of the District Court in admitting testimony, (1) relative to the seizure and search of Crowe's Plymouth car on November 10, 1949, at Cairo, Illinois; and (2) the admission on rebuttal of the written statement of Silas Brooks made shortly after his arrest.

The evidence for the Government consisted of the testimony of Silas Brooks, an accomplice, United States Secret Service agents, a sheriff of an Illinois county, and several other witnesses. In order to understand the alleged errors, it is necessary to state the facts as the jury might have found them from the evidence.

It appears that for more than two years before their conviction in this case, William L. Crowe and Dorothy, his wife, resided at 2938 Yeiser Street, in Paducah, Kentucky. Mary Cornwell, a sister of Adrian Higgins, resided a few blocks from where the Crowes lived in Paducah for a period of over two years, before April 1950. Adrian Higgins and the Crowes had been acquainted with each other for two or three years prior to April 1950. On November 10, 1949, Mrs. Crowe's brother, James C. Skekell, and his friend Raymond S. Hicks, were given Crowe's Plymouth car at the Crowe home on Yeiser Street, in Paducah, Kentucky. Within three hours after getting the automobile, Skekell and Hicks were arrested in Cairo, Illinois, about forty-five miles distant from Paducah, for passing a number of ten dollar counterfeit notes. They were apprehended while one of them was driving Crowe's Plymouth car.

In the right hub cap of the Plymouth automobile were found eighty-one ten dollar counterfeit notes. Under the steering wheel in a sack, hooked to the ignition wires, were found three ten dollar counterfeit notes. In the ash tray of the car, a torn, crumpled ten dollar counterfeit note was found. All of the notes found in Crowe's Plymouth car at Cairo, Illinois, bore the same serial number, and were all identical with the counterfeit ten dollar bills which had been obtained from Crowe and subsequently passed by the several defendants during April 1950, and introduced in evidence.

It appears as to Adrian Higgins that in early January, 1950, Adrian wanted to sell the family 1942 Chevrolet automobile for $1400. He planned on getting $100 in genuine money and $1300 in counterfeit money for the car from some person in Paducah, Kentucky.

While in jail on another charge, Adrian asked his former wife to visit him there, which she did. He asked her to get his billfold from the sheriff, in whose custody it was left when Adrian went to jail. He told his former wife he wanted to see if any of the counterfeit bills were in the billfold. Finding none there he requested his former wife to look under the floor mat, and other parts of his truck, to see if he had placed one of the counterfeit bills there. Before she could comply with Adrian's request, Newton (Sweety) Higgins, Adrian's brother, came from East Prairie, Missouri, where he lived, to Metropolis, Illinois, and asked for and was given the keys for Adrian's truck. He examined the truck thoroughly, looking under the floor mat, in the glove compartment, and other parts of the truck.

Shortly after Adrian's release from jail, April 3, 1950, he took Brooks with him, on occasions, to Paducah, Kentucky, where Adrian procured counterfeit bills from William L. (Buddy) Crowe and Dorothy Crowe, at the Crowe home on Yeiser Street. Some of such bills were given to Newton (Sweety) Higgins by Adrian. Thereafter, when Adrian was absent from Metropolis, Newton asked Brooks for some of the counterfeit bills. On a later occasion Brooks went to Paducah in a taxicab to Crowe's home. He identified himself to the Crowes as the man who had been there with Adrian on prior dates. He was told

by the Crowes to come back in an hour, which he did, and received $300 in counterfeit ten dollar bills, for which he paid Crowe $120 in genuine money.

Brooks, Adrian Higgins and Mary Cornwell were together in Metropolis when Brooks passed some of the counterfeit bills for himself and some for Adrian.

Annie Higgins and Newton Higgins passed a number of the counterfeit bills in Missouri. Newton (Sweety) Higgins discussed the possession of counterfeit bills on a trip from Metropolis, Illinois, to East Prairie, Missouri, in the company of Cecil Williams and Brooks. All of the ten dollar bills in evidence are counterfeit, were made from the same plate, and bear the same serial number.

Appellants urge that the court erred in admitting in evidence, under count nine, the eighty-five ten dollar counterfeit notes found in Crowe's Plymouth car, at Cairo, Illinois, on November 10, 1949; and of the ownership of the car, even though Crowe and his wife admitted such ownership and the fact that they permitted Skekell and his friend Hicks to take it on that date, although denying that they knew anything about the counterfeit bills alleged to have been found in the car.

Count nine charged the conspiracy existed from on or about April 15, 1950, and continued until on or about May 1, 1950. When it began is problematical. Brooks is the only defendant admitting his part in it. Appellants denied any participation in it. However, the Government contends that the conspiracy was of a duration longer than merely April 1950, and that it probably included others than those named in the indictment.

It further contends that the conspiracy goes back to November 10, 1949, when Skekell and Hicks took Crowe's Plymouth automobile with eighty-five counterfeit ten dollar bills in it, and passed others of such bills at Cairo, Illinois, before they were arrested. Adrian Higgins was in the conspiracy on or prior to January 8, 1950, when he planned on selling the family car so that he could buy some of the counterfeit bills to pass.

This evidence, on behalf of the Government, was offered as a circumstance in determining the existence of the conspiracy alleged. It was contended it showed a pre-existing conspiracy, an overt act logically connected with other overt acts charged in the indictment and so closely and inextricably mixed up with the history of the conspiracy as to form a part of the plan, scheme or pattern of criminal action of those involved in it, and their criminal intent. The court received the evidence and said he would instruct the jury on the point raised by the objection of defendants.

■ To sustain a charge of conspiracy, the Government need not furnish proof of the unlawful plan or agreement, but such charge may be sustained by evidence showing concert of action in the commission of the unlawful act, or by proof of other acts from which a natural inference arises that unlawful acts were in furtherance of a common design of alleged conspiracy. United States v. Nelson, 7 Cir., 185 F.2d 758.

■ The record discloses that Crowe had control or possession of counterfeit bills, such as those described in the indictment. They were of no value to him unless he could get them into circulation and realize cash, or something of value. He was the general distributor. All the bills in evidence were traced back to him. Adrian Higgins visited Crowe's home several times and came out with a quantity of the counterfeit bills, some of which he passed, some he sold or gave to others to pass. Brooks bought a quantity of the bills from Crowe, some of which he passed, some he gave or sold to Newton Higgins who passed some as did his wife, Annie Higgins. Evidence of another crime is admisssible where the other offense is logically connected with that charged, or where the acts are so closely and inextricably mixed up with the history of the guilty act itself as to form part of the plan or system of criminal action. United States v. Tuffanelli, 7 Cir., 131 F.2d 890. Evidence of another crime is admissible where it was committed as part of the same transaction and forms part of the *res gestae*.

Gianotos v. United States, 9 Cir., 104 F.2d 929.

The instructions given by the court are not incorporated in the record, nor is error assigned on the instructions given. Under this state of the record we must assume that the court by its instructions properly limited the effect of the testimony in question, and in so doing, no error was committed.

The defendants Adrian Higgins, Newton Higgins, and Annie, his wife, claimed that on the day of arraignment, May 23, 1950, in the District Court, they, with Brooks were sitting in the jury box of the courtroom, when, they say, they heard Brooks make the statement: "I mentioned your names to the man because you did not come to see me in jail and I was mad at you." On rebuttal Brooks denied making the statement, and in addition the Government offered other rebuttal evidence and the signed statement made by Brooks to a secret service agent shortly after his arrest, only to show that he told his part in the substantive acts and the conspiracy, as well as those of other defendants, shortly after his arrest and before any of the defendants, except Mary Cornwell, had a chance to visit him, thereby showing that he did not name any co-defendants in his statement because of resentment caused by their failure to visit him in jail. On the trial the court limited the exhibit solely to rebut the statement attributed to Brooks on the date of the arraignment, and we again must assume that the court properly instructed the jury limiting the exhibit to rebuttal of the statements made by the Higgins defendants. The function of rebuttal is to explain, repel, counteract or disprove adversary's evidence. Shepard v. United States, 10 Cir., 64 F.2d 641.

The admission or exclusion of evidence on rebuttal rests largely in the discretion of the trial court, including whether the evidence offered is proper rebuttal in the case. We find no error in the court's action in admitting the rebuttal evidence.

The various acts of possessing, uttering, buying, selling and passing the bills, set forth in specific counts of the indictment, were clearly and convincingly proved, including the details given by Silas Brooks, one of the conspirators. Overt acts of the parties may be considered with other evidence and attending circumstances in determining whether a conspiracy exists, and where the overt acts are of a character which are usually, if not necessarily done pursuant to a previous scheme and plan, proof of the acts has a tendency to show such pre-existing conspiracy, so that when proven they may be considered as evidence of the conspiracy charged. United States v. Holt, 7 Cir., 108 F.2d 365.

It is apparent the jury believed the witnesses for the Government, and it found each of the appellants was bound in a conspiracy to distribute and pass the counterfeit ten dollar bills.

In a prosecution for possessing forged and counterfeited Federal Reserve notes and for conspiracy to utter, publish, pass, buy, sell, keep and possess counterfeited Federal Reserve notes with intent to defraud, errors alleged by defendants which did not affect or prejudice their substantial rights should be disregarded. United States v. Spadafora, 7 Cir., 181 F.2d 957.

We have examined the record and find no errors that are prejudicial to appellants' substantial rights.

The evidence warranted the judgments and they are affirmed.

Judge KERNER concurs in the result.