### UNITED STATES of America, Plaintiff-Appellee,

v.

### Joel Franklin LEVINE, Defendant-Appellant.

### No. 14921.

United States Court of Appeals Seventh Circuit.
Dec. 21, 1965.

Rehearing Denied Jan. 28, 1966.
(En Banc).

George L. Saunders, Jr., Joel Franklin Levine, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Raymond F. Zvetina, Gerald M. Werksman, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Joel Franklin Levine, defendant, has appealed from a judgment of the district court, based on a jury verdict finding him guilty of bank robbery as charged in count 1 of an indictment.

Count 1, in effect, charged that Levine and certain named persons,[1] on or about April 2, 1964, at Rockford, Illinois, took from certain named and unnamed employees of the Alpine State Bank, Rockford, Illinois, the deposits of which were then insured by Federal Deposit Insurance Corporation, approximately $27,-754.60 in money then in the care and possession of said bank, and in so doing they put said employees in jeopardy by the use of a firearm, in violation of 18 U.S.C. § 2113(a) and (d).

In count 2 the indictment charged that on or about December 11, 1963, at said Rockford, Levine and another person (Smith) by force, willfully took from the person and presence of certain named and unnamed employees of said bank similarly insured deposits amounting to approximately $36,103, and did with a firearm put the lives of said employees in jeopardy, in violation of 18 U.S.C. § 2113(a) and (d).

According to his counsel, the basic issue is the fundamental fairness of defendant's trial in that, while defendant was tried and convicted on a single count of robbing said bank on *April 2, 1964,* during the course of the trial the Government repeatedly injected the charge that defendant had also robbed the same bank on *December 11, 1963.*

1. In support of his contention in this court, defendant's counsel is required to fully comply with the rules of this court so that we may be fully informed of everything in the trial court record relevant to that contention. Notwithstanding that requirement and especially the express language of our rule 16, no appendix, either printed or typewritten, was filed. While we did waive the printing of the record and permit the filing of typewritten briefs, the filing of an appendix was not waived. Without such appendix we are confronted with the task of examining 635 mimeographed pages of trial proceedings. We have repeatedly held that, unless waived by the court, such an appendix must be filed by appellant. United States v. Dixon, 7 Cir., 343 F.2d 510, 511 (1965), and cases there cited.

Nevertheless, we assume that court-appointed counsel for appellant in this case is undoubtedly rendering his services without remuneration and, for that reason, we wish to alleviate the situation which exists due to the absence of an appendix. So we shall assume as correct

---

1. Warren David Smith, also known as Shelby Madison, and William John Henry Hart, Jr.

the statement of facts as set forth in the government's brief, which has not been questioned by appellant's counsel.

2. After the jury was sworn to try the issues, the prosecutor read to the jury both counts of the indictment and stated:

"* * * I am going to limit myself to the evidence to be heard under the first count of the indictment, the April 2, 1964, robbery. * * *"

At the conclusion of the statement, defense counsel for Smith (Mr. Schirmer) stated:

"May it please the Court, I have heard nothing in the opening statement concerning December, 1963."

The Court asked:

"Did you intend to say nothing in your opening statement about the evidence which you propose to offer in connection with the other count?"

Mr. Zvetina (Government counsel):

"That is right, your Honor."

The prosecutor stated:

"Well, I waive on Count II. * * I intend to proceed on Count I."

In the presence of the jury, the prosecutor stated that the government did not intend to adduce any evidence on the count concerned with the December 11, 1963 date.

The government then moved to dismiss count 2, which was granted, and the jury was instructed immediately to disregard the fact that it had been read to it. The court said, "It is not evidence."

In this court it is the contention of defendant's counsel that, by dismissing the count relating to the December charge from the case, the government put the defendant in a position in which he could not introduce evidence to rebut that charge. Moreover, it is contended that the prosecution used the December robbery charge against him.

The government's witness, vice-president-cashier Wright of the Alpine State Bank, testified that from his office, on April 2, 1964, he noticed a lady customer at a teller's window, with a scared look and her mouth forming the words "He has a gun in his hand". Wright started to dial the sheriff on a telephone when a man with a hand in a pocket motioned him to put the phone down. Wright testified that he heard a voice which he recognized and then a scream by another voice; that then a man wearing a blue-hooded jacket with white stitching, whom he identified as defendant Smith, passed in front of him carrying a sack and a pistol, crossed the lobby and left the bank, followed by the man who had motioned Wright to put down the telephone. Wright tried to obtain the license number on the get-away car used by these men. Wright was cross-examined by Smith's counsel, but not by Levine's counsel.

Dean Gerber, a teller, testified for the government and related the events of the robbery, identifying defendant Smith as the man who took money from the cashiers and who caused one of the tellers to scream after grabbing her arm and spinning her around. Gerber put the money in his cage into a bag which Smith had, in addition to a gun. He identified a gun offered in evidence as the same, or similar to the, one used by Smith.

Gerber testified he walked with Smith to the fifth window and told him "there was no money there." He then saw Smith leave the bank with another person who had been standing by the door. They sped out of the shopping center in a "shiny black '58 or '59 Buick car", and that, when Gerber was emptying the money into his bag, Smith said "quit stalling".

Teller Rae Ludlum was at the bank's drive-in window on April 2, 1964. She identified Smith as the man who swung her around by the shoulder and pointed a gun at her causing her to scream.

Mrs. Ludlum testified that she had heard this man's voice on a prior occasion and had seen him walk prior to April 2, 1964. This testimony was then objected to by defense counsel, but the court let it stand and stated that counsel might "cross-examine on that point". Neither counsel returned to this point and questioned her. In fact counsel for defend-

ant Levin chose to refrain from cross-examining Mrs. Ludlum.

Witness Virginia Moore, a teller, pointed to and identified defendant Smith as the man who on April 2, 1964 came to her cash window with a gun in his hand and said: "Don't move or I will blow your head off". She stated that he handed her a pillow case and told her to put her money in it, which she did. She identified a gun handed to her marked government exhibit 3 as similar to the one pointed at her by Smith.

Catherine Compton, a secretary-receptionist at Alpine State Bank, testified that she saw two men in the bank on April 2, 1964 and she identified defendant Smith as one of them. She saw the two men leave in a black car. Only counsel for Smith cross-examined her.

Smith withdrew his plea of not guilty and entered a plea of guilty and the jury was acquainted with these facts, but was told that it was without prejudice to Levine.

Another witness testifying for the government was Mrs. Dixie Hoskins, employed in a drugstore nearby, who heard the burglar alarm for the bank ring on April 2, 1964. She observed a black car with motor running near the bank. It had "Special" written on the back of it. Two men with hooded coats came out of the bank, entered the car and drove away. One man carried a white pillow-case or sack and wore glasses. The car had license plate Ill. HF 4407. She was not cross-examined.

Floyd Hendricks testified that license Ill. HF 4407 was his and that it was torn off his car prior to April 2, 1964.

Hart testified that in March, 1964 he was employed at defendant Levine's service station. He was hired about the end of February or the beginning of March 1964 and said he first knew defendant Smith as Shelby Madison, proprietor of a restaurant and food store a few doors from the gas station. Levine owned the store prior to Smith.

Four to five days prior to the April bank robbery, Levine asked Hart if he was interested in $200. The reply was in the affirmative and Levine said "fine" and "find me a car". The next day Levine said "We have got to find a car pretty soon". On April 1, Levine told Hart at the gas station, "It has to be today that we get the car". Following further conversation that day, Levine gave Hart the ignition key for a 1963 Pontiac so that he could exchange it for the key to another car. After driving around in Rockford, Hart saw a 1958 Buick in a car lot, tested it and traded keys, taking the ignition key for the Buick and replacing it with the Pontiac key. That evening, according to a pre-arranged plan, Hart met Levine at the gas station. They drove in Levine's car and took a license plate off a car in the street.

Hart entered the lot and got into the 1958 Buick and left the lot, following Levine's car to a spot where he tried unsuccessfully to put on the license plate, and then followed Levine to a garage connected with a house on Vail Street, and Hart drove the car into the garage, taking off the gloves that Levine had given him earlier that evening and putting them on the front seat. Levine took Hart home and, in reply to a question about Hart's $200, Levine said he did not have $200. He said, "You will have to wait until tomorrow. I will give you $200 and then some".

The next day Hart asked Levine about the Buick having a noticeably white roof. The latter said he had painted it but it was still tacky. Levine was driving a yellow and white Opel. Normally he drove a '61 Buick. At the station Levine said the brakes were bad on his car. They then both rode in the Opel to the Vail Street house. Referring to the conversation which then occurred between him and Levine, Hart testified:

"He said what the car was going to be used for had fallen through. And he said 'So that means you don't get no $200 and you got to get rid of that car some place. You can't leave it where it is at.'

"He says, 'Well, maybe.' Then he says, 'My boy was going to take the Park State Bank, but there was too much law and people.'

"Then, 'So now he wants to take the Alpine State Bank *again.*' (Emphasis supplied.)

"He said, 'Do you want to drive for that?'

"I told him, 'No, I don't want to drive for that.' I said, 'Everybody will recognize me.'"

This testimony went in without objection by counsel for Levine.

The arrived at the house on Vail Street and Levine went in alone staying 20 or 30 minutes, and then beckoned Hart to come into the house. When he entered Hart saw Smith and a gun on a desk. Levine and Smith urged Hart to drive the car during the robbery. Hart testified:

"I told him, 'Yes, I am afraid. I am afraid I don't want to drive in that.'

"He says, 'You can get a lot more money than $200.'

"I said, 'Yes, I could also get shot. That bank has just been held up shortly—a short while ago. They probably have got policemen all over the place. They will probably be ready to shoot anybody that comes near that bank.'"

There was no objection to this testimony. Hart was concerned about being recognized and Levine gave him a brown stadium coat with a hood on it and a scarf and sun glasses. Finally, after Levine pointed out that Hart was "already in up to here", Hart agreed to drive the car for the robbery.

According to his testimony, he stated that he was not too familiar with the route and Levine assured him not to worry, that Shelby (Smith) knew the route "like the back of his hand. He could go the route blindfolded".

Levine explained to Hart, that if anything should go wrong, like a police car coming into the driveway, he (Levine) would be in a position where he could back into it and disable it, so that it could not chase Hart, as he was experienced in this and could make it look like an accident. Levine said "I have track experience".

After the holdup, Hart drove the Buick to the house on Vail Street and put it in the garage, took off his disguise, talked with Smith and thereupon left the house and got into the wrecker. Hart then drove one block in the wrecker and saw Levine parked at a stop sign. Levine waved and Hart proceeded to the gas station, where Levine returned about an hour and a half later and they talked about getting rid of the car and other evidence of the crime. Levine suggested that they wait until evening, when Hart saw Levine at the gas station and they went to the house on Vail Street, scouted it for suspicious signs, and then parked across the street. They entered the house as well as the garage. Levine had a bundle with "the clothes, the money and the things from the robbery." At Levine's direction Hart threw the bundle in the trunk of Levine's 1961 Buick. Levine took him directly home in Levine's car and indicated that he would give him $5000 for what he had done and that they would talk about it the next morning, which they did, when Levine picked Hart up and brought him to the gas station. The car was then parked inside the garage and the trunk opened. A fire was burning in an oil drum and, when asked, Levine said that he was "burning the clothing and other things from the robbery". At Levine's direction, Hart got a can of gasoline [2] and kept the fire burning so that there would be nothing but powder left. However, Hart observed in the barrel the coat he had worn in the robbery, a paint brush and a can, the same size as he had given Levine the day before. After the fire stopped there was not much that was recognizable; even the can had flattened out. Hart told Levine that the gloves were still in his Buick and, at Levine's direction, he procured the gloves and

2. He used about 12 to 15 gallons.

burned them. Thereafter Levine opened a paper sack which was in the trunk of the car, took out a plastic bag and said "Here is your money, $5000." The money was put in a sack and laid in a fuse box at the gas station. The wrappers were put in a can and burned by Levine.

The $5000 which Hart received he took home that evening, which was Friday, and it remained there until after Levine was arrested. He secreted it until Wednesday or Thursday when he drove to Wauconda, bought a thermos jug and buried the money in it near Woodstock, Illinois. It was there when he "gave it to the FBI" on April 12.

The evidence to which we have made reference was corroborated by several government witnesses, including FBI agents McKenzie, Robinson and Riggs, as well as by Melvin Moede, Jr., a banker employed by the Alpine State Bank.

Defendant Levine testified in his own behalf. His wife and a character witness, Wayne Allen, testified for Levine. Allen testified that Levine had a good reputation for honesty and integrity, but that he did not know that Levine had been convicted in 1955 for robbery and sentenced to prison.

From this record, to which we have alluded in an extensive manner, defendant's counsel in this court would have us hold that "the trial court acted unlawfully in permitting the government to attempt to persuade the jury of defendant's guilt with respect to a charge which was dismissed."

It is argued that "although the sole question before the jury was that of defendant's alleged guilt with respect to the April 2nd robbery, the Witness Hart was permitted to suggest that defendant had been afraid to enter the Alpine State Bank lest he be recognized from having been there on a previous occasion."

However, the record shows that defendant Levine indicated to Hart, an employee of his filling station about March 27, 1964 that he would pay him $200 and told Hart to find a car, emphasizing the following day that, "we have got to find a car pretty soon." In carrying out this assignment Hart, on April 1, stole a car and a license plate, thus the car used in the robbery on April 2, 1964 was made available for that purpose. However, Levine on the next day announced to Hart that "you got to get rid of" the stolen car because he had planned "to take the Park State Bank, but there was too much law and people". Hart testified that Levine then said he wanted "to take the Alpine State Bank again". In response to Levine's inquiry as to whether Hart wanted to drive for that venture, Hart demurred because "everybody will recognize me". There was no objection to the questions which elicited these answers and no motion for a mistrial.

█ There are several reasons why Levine cannot in this court complain of admission of this evidence. As we view the record, what occurred at the December 1963 holdup of the Alpine State Bank was relevant in connection with the trial of defendants for the April 2, 1964 crime. It is obvious that both Levine and Hart realized that successive holdups of the same bank by them would subject the participants to more exposure and increase the likelihood of their identification. We believe and hold that evidence of the holdup committed in December 1963 was admissible and that defendants at their trial were not prejudiced thereby in contravention of any rule of law.

In United States v. McCartney, 264 F. 2d 628 (1959), at 631, cert. den. 361 U.S. 845, 80 S.Ct. 98, 4 L.Ed.2d 83, we said:

> " * * * Evidence even of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances thereof. United States v. Wall, 7 Cir., 1955, 225 F.2d 905; United States v. Crowe, 7 Cir., 1951, 188 F.2d 209."

We adhered to this ruling in United States v. Ruehrup, 333 F.2d 641, 645 (1964), cert. den. 379 U.S. 903, 85 S. Ct. 194, 13 L.Ed.2d 177. See also Toles

v. United States, 9 Cir., 308 F.2d 590, at 593 (1962), cert. den. 375 U.S. 836, 84 S.Ct. 79, 11 L.Ed.2d 66.

3. Levine's counsel in this court contends that the sentence of 25 years imprisonment imposed by the district court was based upon unlawful considerations. He cites no decisions, federal or state, in support of this argument. The sentence is within the scope of statutory law applicable thereto. 18 U.S.C.A. § 2113(a) and (d). We do not find that counsel in his brief in this court has presented any argument requiring us to take any action in this case which would in any way interfere with the discretion of the trial judge in imposing a sentence within the limitations prescribed by the act of Congress.

The anatomy of this robbery was personally conceived, planned and its execution supervised by Levine.

For all of these reasons the judgment from which this appeal was taken is affirmed.

Judgment affirmed.