**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Opal COLE et al., Defendants-Appellants.**
**Nos. 14714, 14722, 14723, 14737 and 14861.**

United States Court of Appeals
Seventh Circuit.

Aug. 10, 1966.

Rehearings Denied in No. 14714, Sept. 7, 1966, and Sept. 15, 1966.

Rehearing Denied in Nos. 14722, 14723 and 14861 Sept. 19, 1966.

**58**

Charles A. Bellows, Doris A. Coonrod, Jason E. Bellows, Sherman C. Magidson, Chicago, Ill., for defendant-appellant, Michael De Maro.

R. Eugene Pincham, William R. Ming, Jr., Charles B. Evins, Earl E. Strayhorn,

Chicago, Ill., for defendants-appellants Americo De Pietto, Charles Cole and Jesse Cowan.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Robert S. Bailey, Richard J. Phelan, Gerald M. Werksman, Asst. U. S. Attys., Chicago, Ill., for appellee, Lawrence Jay Weiner, Asst. U. S. Atty., of counsel.

Richard F. LeFevour, Oak Park, Ill., for defendants-appellants Cameron, Spencer and Isaacson.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Opal Cole and several other defendants [1] have appealed from a judgment of conviction entered by the district court on the verdict of a jury, after a trial on a 40-count indictment which named them and other persons as co-conspirators.

The theory of the government has been that the numerous defendants named were members of a conspiracy trafficking in narcotics, and that the conspiracy operated on three levels—suppliers, distributors and salesmen.

From our analysis of the voluminous trial record, we have come to the conclusion that there was evidence introduced which supports the theory of the government that defendants Di Pietto, De Maro, Ted De Rose, Battiato and Passini were suppliers of heroin who made available to defendants named as distributors large amounts of that drug. The suppliers allocated territories, consigned quantities of the drug, packaged wholesale amounts, and collected money from the distributors. The evidence tended to show that on the south side of Chicago defendants Opal and Charles Cole, together with Nolan Mack (who met death four days prior to the return of the indictment), were distributors.[2] De-

---

1. Charles Cole, Jesse Cowan, Americo Di Pietto, James Isaacson, LaFauncie Johnson, Kirsten Spencer, Angelo Passini, Joe Battiato, Michael De Maro, Frank Carrioscia, and Zedrick Cameron. Subsequently the appeals of Cameron, Spenc-

er, Isaacson, Battiato and Carrioscia were dismissed.

2. There was evidence that on the west side the distributors were Cowan, Carrioscia, Isaacson, Charles Sparkman and Cameron.

fendant LaFauncie Johnson was a seller and messenger for the Coles.

■ On December 12, 1961, about 11 P.M. Opal Cole was arrested by agent Hughes, who took her to her apartment, using her key for entrance. Finding Johnson in the living room, he arrested him. Incidental to the arrest of Johnson, a search was made and Opal Cole's notebooks were seized. Because of entries therein, they were clearly admissible as instrumentalities used in the crime charged in the indictment.

On October 25, 1963, De Maro and Battiato had a talk on a street corner at about 7:30 P.M. and an hour later, Mack picked up Battiato at the corner and drove to a building at 533 Belden, where Battiato lived and which he entered, returning a minute later to the car. He then gave Mack a package and Battiato went into his apartment and counted several bundles of money.

■ Mack met his death in an automobile on the same evening (October 25, 1963), as he was pursued by federal narcotics agents on a main highway through Chicago. During the chase he was shot by his pursuers and heroin was then found in his car. These circumstances were relevant to explain the condition of the heroin and the absence of the container in which Mack originally received the heroin.

1. Counsel for defendant De Maro, following the examination of Beulah Greenlaw, a government witness, requested the trial court to examine her testimony before the grand jury to determine whether the grand jury's minutes of that testimony should be turned over to counsel for use on cross-examination. The court examined the minutes and refused to turn them over to De Maro's counsel.

■ Defense counsel stated to the court that he believed that he was entitled to any minutes or notes taken during the course of the hearing of testimony before the grand jury, adding:

"Judge, I think there will be conflicting testimony between anything which she stated before the Grand Jury and she has presently told this Court and Jury."

Government counsel admitted that the witness had testified before the grand jury. Defense counsel stated:

"There is no way I can tell if there is any inconsistency between the Grand Jury testimony of the witness and that which she might have testified to here."

Government counsel handed the grand jury minutes to the court, which examined them but refused to turn them over to defense counsel.

We cannot say that defense counsel laid a basis for the inspection of the grand jury proceedings by the trial court. The most that can be said is that the record reveals a hope by the defense attorney that something in the testimony of witness Greenlaw before the grand jury was inconsistent with her testimony upon the trial. This is not sufficient to cause us to override the position taken by the district court here.

In Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, at 398, 79 S.Ct. 1237, at 1240, 3 L.Ed.2d 1323 (1959), the court said:

"Petitioners concede, as they must, that any disclosure of grand jury minutes is covered by Fed.Rules Crim. Proc. 6(e) promulgated by this Court in 1946 after the approval of Congress. In fact, the federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge. Our cases announce the same principle, and Rule 6(e) is but declaratory of it. As recently as last Term we characterized cases where grand jury minutes are used 'to impeach a witness, to refresh his recollection to test his credibility and the like' as instances of 'particularized need where the secrecy of the proceedings is lifted discretely and limitedly.' United States v. Procter & Gamble, 356 U.S. 677, 683 [78 S.Ct. 983, 987, 2 L.Ed.2d 1077] (1958).

"Petitioners argue, however, that the trial judge's discretion under Rule 6(e) must be exercised in accordance with the rationale of *Jencks;* namely, upon a showing on cross-examination that a trial witness testified before the grand jury—and nothing more— the defense has a 'right' to the delivery to it of the witness' grand jury testimony.

"This conclusion, however, runs counter to 'a long-established policy' of secrecy, United States v. Procter & Gamble, supra, at 681 [78 S.Ct. 983] older than our Nation itself. * * * "

2. Eighteen defendants went on trial. The indictment named twenty-two defendants and thirty-five unindicted coconspirators.[3] The structure of the conspiracy and connection of the defendants therewith are shown largely by the testimony of four government witnesses, Barbara Mitchell, Houston Garner, James Faris and Charles Sparkman.

The evidence showed that Mitchell bought heroin from the Coles, Di Pietto and De Maro at a meeting where the distribution of narcotics and Mack's participation were discussed, and also that Passini received $5,000 from Opal Cole in payment for narcotics.

According to his testimony, Garner bought heroin from Opal Cole which was delivered to Garner by LaFauncie Johnson. He also saw De Maro with Opal during negotiations for the purchase by Garner of a wholesale quantity of heroin.

Faris said he purchased heroin from Cowan. In fact he went with Cowan to a meeting attended by Carrioscia where distribution of narcotics was discussed.

Sparkman testified he bought heroin from Carrioscia.

The Coles, Carrioscia and Cowan were distributors from whom the four government witnesses testified they bought heroin. Mack was also a distributor. These persons all obtained heroin from Di Pietto's group which included De Maro, De Rose, Passini and Battiato.

We need not encumber this opinion with the details marking the day by day transactions beginning in the spring of 1961 in which these four government witnesses, according to their own testimony, and as corroborated by other facts and circumstances in evidence, became associated with other conspirators in carrying out the extensive trafficking in narcotics shown by the record before us.

We can sum it up in the words of government counsel who have said in their brief:

"In the instant case, the object of every conspirator was to sell the narcotics made available by the suppliers to the distributors so that the operation could continue. Just as the quality of the heroin was diluted by each on the way down, so the profits were skimmed by each on the way up."

Even though the contacts between the different conspirators as among themselves varied from day to day, if they were shown by the evidence to the satisfaction of the jury to have been engaged in a common plan to violate the narcotics acts, the evidence in the case at bar is sufficient to support a conviction on the indictment upon which defendants were tried. As was said in Poliafico v. United States, 6 Cir., 237 F.2d 97, 103 (1956), cert. denied 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed. 2d 597.

" * * * The fact that one such supplier did not have dealings with another supplier does not matter. If each performs the same role at successive stages for the same ends, and both know and participate in the plan of the others to buy and sell heroin at a profit, each is guilty as a conspirator. United States v. Tramaglino, 2 Cir., 197 F.2d 928. * * * "

Moreover, there having been competent proof of a conspiracy to violate the nar-

---

3. One defendant was granted a severance for reasons of ill health. A directed verdict of acquittal was given one defendant and four others were acquitted by the jury. Of the twelve found guilty, the appeals of seven are now before us.

cotics acts, none of the conspirators is in a position to object to the introduction into evidence of the acts of the co-conspirators, even though they were not all present on each occasion. Thus in United States v. Iacullo, 226 F.2d 788, 793 (7 Cir. 1955), cert. denied 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839, we said:

"As to the conspiracy count, proof of the September 18, 1853 offense was admissible as corroborative of other evidence received to prove that count, because the pattern of that transaction bore a strong resemblance to the pattern of other transactions proved to have taken place in carrying out the conspiracy. * * * "

Again, in United States v. McCartney, 264 F.2d 628, at 631 (7 Cir. 1959), cert. denied 361 U.S. 845, 80 S.Ct. 98, 4 L.Ed. 2d 83, we said:

" * * * Evidence even of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances thereof. United States v. Wall, 7 Cir., 1955, 225 F.2d 905; United States v. Crowe, 7 Cir., 1951, 188 F.2d 209."

While it is true that Mack was an unindicted co-conspirator (having died before the indictment was returned), the fact remains that defendants were on trial for conspiring with Mack to sell narcotics. Thus Mack's actions, including the disposal of the contents of a bag on an expressway as he drove his car with agents in pursuit, and the presence of heroin in his car, are relevant as proof of the conspiracy and the parts played therein by several of the defendants.

3. Counsel for defendants made a motion to suppress exhibits 8 and 9, described as "two address indexes". The motion was denied and it is now claimed that this was error, being a violation of the fourth amendment of the constitution of the United States.

We find that the record reveals that narcotics agent Hughes testified that on December 12, 1961 he was advised that warrants had been issued for the arrest of Opal Cole and her brother, defendant LaFauncie Johnson, who both lived in Chicago, and that she operated a dress shop. Thereupon with the help of police officers, Hughes arrested Opal Cole at her shop and the group then went to her apartment which Hughes opened with a key supplied by her. Johnson was there alone and was arrested by Hughes. Incidental to his arrest a search was made which resulted in the finding by agent Doyle, who had recently arrived, of two address books (exhibits 8 and 9).

In Harris v. United States, 331 U.S. 145, at 150, 67 S.Ct. 1098, 1101, 91 L.Ed. 1399 (1947), the court said:

"The Fourth Amendment has never been held to require that every valid search and seizure be effected under the authority of a search warrant. Search and seizure incident to lawful arrest is a practice of ancient origin and has long been an integral part of the law-enforcement procedures of the United States and of the individual states."

We hold that the facts in the case at bar bring it within the rule announced in *Harris*. Such address books are admissible in this case. United States v. Owens, 7 Cir., 346 F.2d 329, 332 (1965).

4. Defendant De Maro insists that at the trial evidence was received as to a sale of narcotics by defendant Carrioscia on October 29, 1963, which was after the indictment was returned and ordered suppressed until 11 P.M. Counsel for De Maro cites no controlling authority to support his contention that the return of an indictment, particularly a suppressed indictment, terminates a conspiracy and therefore ends the vicarious responsibility of the conspirators. We find it immaterial that some defendants named in an indictment which had been returned continued to carry on their business as usual after its return. With regard to those defendants the conspiracy was not terminated until their arrests.

As the court said in United States v. Cohen, 2 Cir., 145 F.2d 82, 89 (1944), cert. denied 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637:

"* * * So too as to declarations of the various confederates. In accordance with the well-settled rule these were all admissible while the 'scheme' was in process of realization, provided they were in furtherance of it. Nor would it make any difference that they were after the indictment was found, if the 'scheme' had not yet ended; because, while of course the crime must be complete in all its elements before indictment found, there may be evidence thereafter which tends to prove its past existence. * * *"

5. Defendant Passini contends that his rights under the sixth amendment of the United States constitution were violated by the court's denial of his motion for a severance or continuance.

The record shows that Passini assured the court that he agreed that Mr. Lewis, his attorney, might be excused and that attorney McDonnell, during his absence, would represent Passini. The court was later advised that attorney Lewis had been taken to a hospital for treatment and Passini agreed to continue with Mr. McDonnell. Thereafter the court granted leave to Passini to act as co-counsel for himself. Thereafter Passini asked for a continuance or a separate trial. After extended colloquy between the court, Passini and counsel, the court designated attorney McDonnell to represent Passini and that representation was refused. This did not satisfy Passini, who wanted his own lawyer and was willing to wait for the return of Mr. Lewis after his illness was over. Finally the court instructed Passini to be seated and proceed to represent himself. After further spirited colloquy between Passini and the court, Passini agreed that McDonnell would represent him for the balance of that day.

Discussions between McDonnell and Passini occurred thereafter but were fruitless in satisfying Passini.

In calling our attention to certain testimony, the government has pointed out that on

"September 16, 1963, when Battiato, De Maro and Passini were concerned about a strange car parked in the neigborhood during a transfer of heroin to Carrioscia, it was Passini who suggested that Carrioscia be contacted. * * * Passini's name was not mentioned from the witness stand by any witness during the time Mr. Lewis was absent from the courtroom."

and that Passini was in no way prejudiced by the absence of his counsel.

█ We hold that the court committed no error in handling this difficult situation. We further hold that no statements made by the court were prejudicial to Passini and that he was not denied a fair trial.

█ 6. Counsel for Charles Cole argue that count 39 of the indictment does not allege his commission of an offense as required by the sixth amendment of the constitution of the United States. The basis for the conviction of Cole for violation of Title 18 U.S.C. § 1403 under that count is the testimony of Mildred McLean that, in accordance with Cole's telephone call to her in early 1960, she went to a location mentioned by him and met "Mickey" Carrioscia and received a package of heroin. Similar conversations occurred between them in April and August, 1960. Count 39 also incorporates Title 21, U.S.C. § 174, which prohibits unlawful trafficking in narcotics, already reflected in this opinion. This attack on count 39 must fail.

█ Moreover, the district court did not commit error in denying Cole's motion for a bill of particulars.

7. To avoid an unnecessary protraction of this opinion, we state that, to the extent that any one of the numerous points raised by defendants herein has not been specifically dealt with in this opinion, we conclude that none of said

points finds support either in the record or in the law applicable thereto.

Accordingly the judgment from which these appeals were taken is affirmed.

Judgment affirmed.